345 A.2d 695

Commonwealth of Pennsylvania, Robert P. CASEY, Auditor General, Appellant,

v.

The PENNSYLVANIA STATE UNIVERSITY.

Supreme Court of Pennsylvania.

Argued May 5, 1975.

Decided Oct. 3, 1975.

Frank P. Lawley Jr., Chief Counsel and Deputy Auditor Gen., Robert P. Meehan, Deputy Counsel, Harrisburg, for appellant.

Delbert J. McQuaide, State College, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

The Auditor General of the Commonwealth of Pennsylvania filed a complaint in assumpsit in the Commonwealth Court against the Pennsylvania State University [University] seeking to recover an alleged indebtedness owed the Commonwealth.

The complaint alleged, in substance, that: (1) pursuant to Act 61–A of August 31, 1971, as amended by Act No. 5–A of March 23, 1972, the Commonwealth of Pennsylvania appropriated funds to the University in the amount of $3,710,000 for continuing education programs for fiscal year July 1, 1971 to June 30, 1972; (2) that said funds were appropriated on a "net cost" basis, i. e., they were to be utilized to the extent necessary to pay for the difference between the cost of such programs and the revenue generated thereby; (3) that the audit report of the Auditor General disclosed that the University received $271,055 in excess of the "net cost" of the continuing education program; and (4) that a formal demand for repayment of this sum to the State Treasury made by the Auditor General was refused by the University.

The University filed preliminary objections to the complaint in the nature of: (1) a petition raising the defense of lack of capacity to sue, or, in the alternative; (2) a demurrer for failure to state a claim upon which relief can be granted.

The Commonwealth Court sustained the University's preliminary objections in the form of a demurrer for failure of the Auditor General to state a claim upon

which relief can be granted [1] and dismissed the complaint.

The Auditor General then appealed the dismissal of the complaint to this Court.

The sole issue presented is whether the Auditor General has the legal authority to bring suit to collect monies allegedly owed to the Commonwealth. Because we are in basic agreement with the Commonwealth Court's interpretation of the relevant statutory provisions governing disposition of the issue, we affirm the order of the Commonwealth Court.

It is clear to us that the Auditor General would have lacked the authority to institute this suit, if it had been commenced between 1915 and 1970. Section 23 of the Act of April 28, 1840, P.L. 467, conferred upon the Auditor General specific authority to collect debts owed the Commonwealth, but this act was repealed by the Act of June 7, 1915, P.L. 876. [2]

The enactment of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177 (Administrative Code), 71 P.S. § 51 et seq., and the Fiscal Code, Act of April 9, 1929, P.L. 343, 72 P.S. § 1 et seq., did nothing to alter the existing situation with respect to authorizing the Auditor General to bring the present suit. The Administrative Code placed the authority to institute suit to collect sums due the Commonwealth with the Attorney General and the Department of Justice. [3] The fiscal Code [4] enu-

1. The Commonwealth Court correctly ruled that a demurrer was the proper procedure to raise the issue. See *Maxson v. McElhinney*, 370 Pa. 622, 88 A.2d 747 (1952).

2. Neither the Act of June 7, 1915, nor any reference thereto appears in Purdon's Pennsylvania Statutes Annotated.

3. Administrative Code, § 704; 71 P.S. § 244; § 512, 71 P.S. § 192; § 902, 71 P.S. § 292; § 903, 71 P.S. § 293; § 906, 71 P.S. § 296; and § 908, 71 P.S. § 298.

4. Fiscal Code, §§ 401–404, 72 P.S. §§ 401–404. Section 405 of the Fiscal Code empowers the Auditor General to adjust claims against the Commonwealth, 72 P.S. § 405.

merates the auditing powers and duties of the Auditor General. Additionally, in this context we observe that under Section 706 of the Administrative Code, 71 P.S. § 246, the Auditor General retains such powers as were vested in him at the time of the enactment of the Administrative Code. However, at that time, the Auditor General had no power to institute suit, since, as we have previously noted, the power to do so had been removed from him by the Act of June 7, 1915.

■ In 1970 the legislature amended the Administrative Code to authorize separate legal counsel for the Auditor General. See the Act of December 17, 1970, P.L. 935. It is upon the basis of those amendments that the Auditor General contends he now has the authority to sue to recover an indebtedness owed the Commonwealth. Specially, Section 512, 71 P.S. Section 192; Section 902, 71 P.S. Section 292; Section 903(b), 71 P.S. Section 293(b); and Section 906, 71 P.S. Section 296, were amended to read as follows (language added by the amendments is underscored).

> "Section 512. Legal advice and services.—Whenever any department, other than the Department of the Auditor General, board, commission, or officer of the State Government, shall require legal advice concerning its conduct or operation, or when any legal difficulty or dispute arises, or litigation is commenced or to be commenced in which any department, other than the Department of the Auditor General, board, Commission, or officer, is concerned, or whenever any taxes or other accounts of any kind whatever due the Commonwealth remain overdue and unpaid for a period of ninety days, it shall be the duty of such department, board, commission, or officer, to refer the same to the Department of Justice.

> "It shall be the duty of any department, other than the Department of the Auditor General, board, commission, or officer, having requested and received legal

advice from the Department of Justice regarding the official duty of such department, board, commission, or officer, to follow the same, and, when any officer shall follow the advice given him by the Department of Justice, he shall not be in any way liable for so doing, upon his official bond or otherwise.

"Before the Department of Justice shall render any opinion, interpreting any appropriation act, or act authorizing the expenditure of money, it shall notify the Department of the Auditor General and the Treasury Department, of the question upon which its opinion has been requested, and afford to these departments an opportunity to present any views which they may have upon such question.

"It shall be unlawful for any department, other than the Department of the Auditor General, board, commission, or officer, of the Commonwealth, to engage any attorney to represent such department, board, commission, or officer, in any matter or thing relating to the public business of such department, board, commission, or officer, without the approval in writing of the Attorney General."

"Section 902. Legal Advice.—The Department of Justice shall have the power, and its duty shall be:

"(a) To furnish legal advice to the Governor, and to all administrative departments, other than the Department of the Auditor General, boards, commissions, and officers of the State Government, concerning any matter or thing arising in connection with the exercise of the official powers or the performance of the official duties of the Governor, or such administrative departments, boards, commissions, or officers;

"(b) To supervise, direct and control all of the legal business of every administrative department, other than the Department of the Auditor General, board, and commission of the State Government."

"Section 903.   Litigation.—The Department of Justice shall have the power, and its duty shall be:

*     *     *     *     *     *     *

"(b)  To represent the Commonwealth, or any department, other than the Department of the Auditor General, board, commission, or officer thereof, in any litigation to which the Commonwealth or such department, board, commission, or officer, may be a party, or in which the Commonwealth or such department, board, commission, or officer, is permitted or required by law to intervene or interplead."

"Section 906.   Deputy attorneys general.—In addition to such deputy attorneys general as may be appointed to assist in the conduct of the regular work of the department, the Attorney General, with the approval of the Governor, shall have power:

"(a)  To appoint and fix the compensation of such special deputy attorneys general, as may be required, to represent and advise the Workmen's Compensation Board; and any other departments, other than the Department of the Auditor General, boards, and commissions, which may require the services of counsel to such an extent as to render it reasonably necessary to assign deputy attorneys general exclusively to their work.   .   .   .

"(b)  From time to time appoint and fix the compensation of special deputy attorneys general, and special attorneys, to represent the Commonwealth, or any department, other than the Department of the Auditor General, board, or commission thereof, in special work or in particular cases.

"(c)  To appoint and fix the compensation of deputy attorneys general, to represent the Commonwealth, and the several departments, other than the Department of the Auditor General, boards, and commissions thereof, in all legal matters arising in any city or

county, other than the State capital, except as otherwise provided in this act: Provided, That the same deputy attorney general may be assigned to two or more cities or counties in the discretion of the Attorney General."

At the same time the Act of December 17, 1970, P.L. 935 added two new sections to the Administrative Code, § 1002, 71 P.S. § 312 and § 1003, 71 P.S. § 313:

"Section 1002. Chief counsel; deputies.—The Auditor General shall have the power to appoint and fix the compensation of a chief counsel and such other deputy counsels as the Auditor General deems necessary to provide legal assistance to the Auditor General."

"Section 1003. Powers and duties of chief counsel.— The office of the chief counsel to the Auditor General shall have the power and its duty shall be:

"(a) To furnish legal advice to the Auditor General concerning any legal matter or thing arising in connection with the exercise of the official powers or performance of the official duties of the Auditor General.

"(b) To supervise, direct and control all of the legal affairs of the Department of the Auditor General.

"(c) To represent the Auditor General in any litigation to which the Department of the Auditor General may be a party or in which the Department of the Auditor General is permitted or required by law to intervene or interplead."

The Auditor General argues that the amendment to § 512 of the Administrative Code relieves the Auditor General of the previously existing duty to refer overdue accounts to the Department of Justice. We concede that the language amending this section is ambiguous in that it is susceptible to conflicting inferences depending upon what is interpreted as the antecedent of the word "such."

On the one hand, if "such" refers back to "any department", the Auditor General is still obligated to refer

debts due the Commonwealth to the Department of Justice for collection. This is the manner in which the Commonwealth Court interpreted the section. The Auditor General urges that the proper antecedent of "such" is "any department, other than the Department of the Auditor General." Interpreted thusly, the section does exempt the Auditor General from the duty of referral.

In reaching the conclusion that the Auditor General is still obligated to refer debts due the Commonwealth to the Department of Justice for collection, the Commonwealth Court noted and considered Section 903(a) in connection with Section 512. Section 903(a) in listing the duties of the Attorney General states:

"(a) To collect, by suit or otherwise, all debts, taxes, and accounts, due the Commonwealth, which shall be placed with the department for collection by any department, board, or commission."

The Commonwealth Court reasoned that the legislature's failure to amend § 903(a) by making an express exception for the Auditor General, in the same manner that it repeatedly used to exclude the Auditor General from the provisions of the Administrative Code, set forth before, indicated a continuing legislative intent that all debts owed the Commonwealth be mandatorily referred to the Attorney General for collection.

The Auditor General contends that Section 903(a) authorizes the Attorney General to collect only those accounts which have been referred to the Attorney General for collection, and that there is no duty imposed upon the Auditor General to refer the type of account here involved to the Attorney General; and hence, this account is not encompassed within § 903(a).

■ Although, resolution of these ambiguities is not as clear to us as the Commonwealth Court, nonetheless we agree with the conclusion reached by that court that

the legislature did not intend to confer upon the Auditor General power to sue to recover an indebtedness due the Commonwealth. We base our conclusion upon a consideration of the relevant factors spelled out by the legislature to afford guidance to the courts in the ascertainment of the legislative intent when a statute is ambiguous. Under the Statutory Construction Act, 1 Pa.C.S. § 1921 et seq., we are bound to consider the object sought to be attained by the legislature, and the former law, including statutes, upon the same or similar subjects.

The Act of December 17, 1970, P.L. 935, added two new sections to the Administrative Code. Section 1002 authorized the Auditor General to appoint a chief counsel and such deputy counsels as he deems necessary to provide him necessary legal assistance, 71 P.S. § 312. Section 1003 spelled out the powers and duties of the chief counsel to include: (1) the rendering of legal advice to the Auditor General regarding the powers or performance of his duties; (2) the supervision of the legal affairs of the Auditor General; and (3) the representation of the Auditor General in litigation to which the Auditor General may be a party, or in which he is permitted or required by law to intervene. 71 P.S. § 313. Simultaneously, the legislature excepted the Department of the Auditor General from the requirements of receiving and following legal advice from, and representation in litigation by the Department of Justice. See the Administrative Code, Section 512, 71 P.S. Section 192; Section 902, 71 P.S. Section 292; Section 903(b), 71 P.S. Section 293(b); Section 906, 71 P.S. Section 296. In enacting these amendments, the legislature was acting against a historical background of an 1840 statute expressly authorizing the Auditor General to sue to collect an indebtedness owed the Commonwealth; repeal of this statute in 1915, and the enactment of an Administrative Code in 1929 placing the authority exclusively in the Attorney

General and the Department of Justice. When viewed in this prospective it is apparent to us, that if the legislature intended to confer upon the Auditor General the authority in question, it would have done so expressly.

■  We are likewise in agreement with the Commonwealth Court that the Act of 61–A of August 31, 1971, does not authorize the Auditor General to bring this suit. That act granted the University an appropriation for the fiscal year July 1, 1971 to June 30, 1972. The Auditor General asserts that the following portion of the act vests him with the power to bring suit to recover the instant sum from the University.

> "Not later than one hundred twenty days after the close of the fiscal year to which this act relates, the Pennsylvania State University shall file with the General Assembly and with the Auditor General of the Commonwealth, a statement setting forth the amounts and purposes of all expenditures made from moneys appropriated by this act.  .  .  .  Such statement of expenditures shall be reviewed by the Auditor General of the Commonwealth, and he shall have the right, in respect to the money appropriated by this act, to audit and disallow expenditures made for purposes not permitted by this act and *to cause such sums to be recovered and paid by the Pennsylvania State University to the Treasurer of the Commonwealth.*"  [Emphasis supplied.]

The Auditor General would have us interpret the words "to cause such sums to be recovered" as a directive that he bring about a judgment in a court of law to recover a debt resulting from an appropriation under this act. While this is a possible construction, to interpret these words in this fashion would lead to the absurd result of a repeal by implication of a major provision of the Administrative Code by an act making an appropriation for the

University. Section 1971 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1971, provides:

"[A] later statute shall not be construed to supply or repeal an earlier statute unless the two are irreconcilable."

In addition, Section 1933 of the same act stipulates in relevant part:

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both."

Accordingly, the proper construction to be given the words "to cause such sums to be recovered", we feel is that, upon discovery by audit, the Auditor General is to refer the matter through the State Treasurer to the Department of Justice for collection of the account. This construction avoids the problems of implicit repeal and inconsistency.

It is also noteworthy that past appropriations for the University have utilized precisely the same language with respect to the powers of the Auditor General. E. g., Act 70–A of August 24, 1966; Act 137–A of July 16, 1968; Act 4–A of March 13, 1970; Act 90–A of June 1970. Prior to the 1970 amendments to the Administrative Code, it would have been beyond argument, impossible for the Auditor General to bring suit in his own name, rather than through the Department of Justice. Therefore, the legislature must have intended the language "to cause such sums to be recovered" to mean to refer the matter to the Department of Justice for collection. There is certainly no indication in the instant appropriation act that the legislature intended the language in question to carry any other meaning than that which it had to have meant prior to the 1970 amendments. Thus, we feel, if the legislature, in the instant appropriations act, had intended to authorize the Auditor General

to bring suit, it surely would have chosen different language to express this change.

The Auditor General finally urges that he has inherent powers, apart from statutory authorization, to sue to collect debts due the Commonwealth. In those cases relied upon by the Auditor General for the proposition that a public officer has implied authority to sue in order to effectuate his duties, there was no other available remedy or other proper party-plaintiff to bring suit. In the instant case, there is a comprehensive statutory scheme for the organization of the Executive Department. Under this scheme, as we interpret it, the Attorney General and the Department of Justice alone are empowered to collect debts due the Commonwealth. Even if specific legislation were absent, the implied power on behalf of the Commonwealth would properly rest with the Attorney General who has broad common law powers (see *Commonwealth ex rel. Minerd v. Margiotti*, 325 Pa. 17, 188 A. 524 (1936)), rather than with the Auditor General.

Order affirmed.

MANDERINO, J., took no part in the consideration or decision of this case.

NIX, J., concurs in the result.