Jewelcor Incorporated, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

388

Argued June 3, 1980, before President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, CRAIG, MACPHAIL and WILLIAMS, JR. Judge WILKINSON, JR. did not participate.

*Howard M. Levinson*, with him *Eugene Roth, Rosenn, Jenkins & Greenwald*, for petitioner.

*Vincent J. Dopko*, Deputy Attorney General, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, October 28, 1980:

Jewelcor, Inc., appeals from a Board of Finance and Revenue decision denying it "industrial corpora-

tion'' exclusion status under the Realty Transfer Tax Act.[1] Upon careful review, we reverse.

Jewelcor, a diversified Pennsylvania corporation with both retail and industrial subdivisions, was engaged in a progressively expanding printing business in Pittston, Pennsylvania. In 1966, the Pittston Chamber of Commerce, a non-profit industrial development agency, proposed that Jewelcor lease an improved parcel of land located in West Pittston for the purpose of developing larger printing facilities. On October 25, 1966, Jewelcor accepted the Chamber's proposal and entered into a 20-year lease agreement with an option to purchase at the end of the leasehold.

In 1975, Jewelcor's printing facility was completely destroyed by fire, thus accelerating the lease's purchase option provisions. The Chamber then transferred the property to Jewelcor on September 28, 1976, for a $1.00 nominal consideration. For the calendar year 1976, Jewelcor accumulated gross income of $41,844,000, of which $3,323,000 or 8% was attributable to the printing division, and $38,521,600 or 92% to its retail jewelry business. Consequently, the Department of Revenue assessed a realty transfer tax on the September 28th conveyance in accordance with Section 3 of the Act, 72 P.S. §3285, which subjects any ''document'' presented for recording to a tax of one percent of the value of the property represented by such documents.

Jewelcor argues that Section 2 of the Act, 72 P.S. §3284, which defines ''document'' as

[a]ny deed, instrument or writing whereby any lands, tenements or hereditaments within this Commonwealth or any interest therein shall be quitclaimed, granted, bargained, sold or other-

---

[1] Act of December 27, 1951, P.L. 1742, *as amended*, 72 P.S. §3283 et seq.

wise conveyed to the grantee, purchaser or any other person, *but does not include . . . transfers between nonprofit industrial development agencies and industrial corporations purchasing from them. . . .* (Emphasis added.) provides its September 28, 1976 transaction with freedom from realty transfer tax. In essence, Jewelcor asserts that it is an "industrial corporation" within the meaning of Section 2 by virtue of its printing division, and as such, the September 28th conveyance is excluded from taxation.[2]

On the other hand, the Board argues that Section 2's utilization of the term "industrial corporation" was never intended by the legislature to include a Jewelcor-type corporation, which derives 92% of its gross income from the retail sale of jewelry but only 8% from its industrial activity. The Board proposes that we look to a corporation's primary business activity as measured by gross income to determine "industrial corporation" status within Section 2's exclusionary language. We disagree.

In our concerted opinion, the "primary business test" as proposed by the Board is not only judicially unacceptable but fails to implement the clear legislative intent behind the tax exclusion's enactment. In the first instance, the Board would have us ignore

---

[2] Jewelcor has argued that it is "exempt" from paying a realty transfer tax relying on the express language of the Board's Departmental Regulation 408, 61 Pa. Code §91.49.

However, we must be quick to point out that our case law gives Section 2 of the Act, 72 P.S. §3284, priority and establishes an "exclusion" rather than an "exemption" to tax. While not determinative here, the distinction is important and must be consistently drawn. *See Hahnemann Medical College and Hospital of Philadelphia v. Commonwealth,* 52 Pa. Commonwealth Ct. 558, 563, 416 A.2d 604, 606, n.1 (1980), and *Tyger & Karl Complete Water Systems Co. v. Commonwealth,* 5 Pa. Commonwealth Ct. 154 (1972).

the present day realities of corporate subsidiary acquisitions and intracorporate diversification. The primary business test effectively denies Section 2 tax exclusions for diversified corporations which have simply failed to separately incorporate their subdivisions. There can be little doubt that had Jewelcor held its printing division in a parent-subsidiary corporate relationship, the Section 2 tax exclusion would have been allowed. *See Messenger Publishing Co. v. Allegheny County Board of Property Assessment,* 183 Pa. Superior Ct. 407, 132 A.2d 768 (1957). No logical or practical reason can be derived from this "corporate" distinction which seems to necessitate an industrial subdivision's statutory incorporation. We are drawn to this conclusion by the fact that the primary business test would produce unmanageable and untoward results where the corporation is closely or evenly split between industrial and retail business activities.

In the second instance, the tax incentives contemplated by the Section 2 exclusion were never intended to depend upon primary business activity but seek to encourage non-profit industrial development agencies and private industry to work together for the purpose of stimulating economic growth within local communities and the Commonwealth.

Although the Realty Transfer Tax Act does not specifically address the legislative intent of its Section 2 exclusion, we can draw a logical tax-related inference from Section 10 of the Industrial and Commercial Development Authority Law.[3] The law provides tax freedom to duly created industrial and com-

---

[3] Act of August 23, 1967, P.L. 251, *as amended,* 73 P.S. §371 et seq. However, by addressing the Industrial and Commercial Development Authority Law, we do not adopt a position that this law or the Pennsylvania Industrial Development Authority Act, Act of May 17, 1956, P.L. (1955) 1609, *as amended,* 73 P.S. §301

mercial development authorities whose public existence, operation and purpose is, in pertinent part, to alleviate unemployment and serve the worthwhile cause of "creating and developing business opportunities by the construction, improvement, rehabilitation, revitalization and financing of industrial, commercial, manufacturing and research and development enterprises."[4] Given this legislative underpinning, however distinguishable, and the present economic and unemployment situation in our Commonwealth today, we are compelled to this result.

Central to the disposition of this matter, therefore, is a more comprehensive, workable definition for the legislative's use of the term "industrial corporation."

According to the Statutory Construction Act, a statutory phrase must not only be given its ordinary and common meaning, 1 Pa. C. S. §1903; *In the Matter of: Condemnation by Redevelopment Authority of the City of McKeesport,* 22 Pa. Commonwealth Ct. 390, 348 A.2d 918 (1975), but the interpretation must ascertain and effectuate the intent of the General Assembly. 1 Pa. C. S. §1921. *See also Casey v. Pennsylvania State University,* 463 Pa. 606, 345 A.2d 695 (1975).

Without precedent here, we must conclude that the operative word is "industrial" and the terms must be read to include a corporation which engages in in-

---

et seq., can be read in para materia with the Realty Transfer Tax Act. Indeed, they are fundamentally different and shall be treated accordingly.

[4] We dismiss the Board's argument that the 1976 fire which destroyed the printing facility effectively disengages Jewelcor as a corporate entity from any industrial activity. Since the original 1966 agreement between the Chamber of Commerce and Jewelcor is the basis for the transaction, our decision on tax exclusion status must relate back.

dustrial activity, either primarily or partially through a corporate subdivision. If a corporation is thus seeking a Section 2 realty transfer tax exclusion for a transaction involving an industrial subdivision, the Court will consider the following determinative factors:

(1) the corporation must be in a position to legally incorporate the industrial subdivision if it should choose to do so, *and*

(2) the industrial subdivision must be the real party in interest to the realty transfer, *and*

(3) the transfer results in economic stimulation, in terms of industrial development and reducing unemployment, within the geographical area wherein the transferred realty is situated.

We are satisfied after a comprehensive review of the record that the transfer between the Pittston Chamber of Commerce and Jewelcor on behalf of its printing division satisfies the enumerated requirements for a Section 2 tax exclusion. We note that Jewelcor's printing subdivision is capable of being separately incorporated, and is the real party in interest. We note further that the transference of property was intended to and indeed resulted in needed economic stimulation through the creation of jobs and the influx of capital to the Pittston area. Though the effect of our decision may result in the loss of some revenues to the Commonwealth, we can only conclude that the long-term benefits will inure to the general economic and employment welfare of our people. Accordingly, we

### Order

And Now, this 28th day of October, 1980, the decision of the Board of Finance and Revenue is reversed. Unless exceptions are filed within thirty (30)

394

days hereof, the Chief Clerk is hereby directed to enter judgment in favor of Jewelcor Incorporated and against the Commonwealth.

Judge MENCER and Judge WILLIAMS, JR., dissent.