Randall S. REICH, Appellant

v.

The BERKS COUNTY INTERMEDIATE UNIT NO. 14, the Berks County Intermediate Unit Board of Directors, the Reading School District, the Board of School Directors for the Reading School District.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2004.

Decided Oct. 18, 2004.

Reargument Denied Dec. 20, 2004.

Kevin J. McKeon, Harrisburg, for appellant.

Michael I. Levin, Huntingdon Valley, for appellees.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge (P.), and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

■ Randall S. Reich (Reich), a taxpayer in the Reading School District, City of

Reading, Berks County, Pennsylvania, asks us to determine whether the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702 (School Code), allows intermediate units to enter into contracts with school districts in their area to bus non-special education students.[1]

The background facts of this dispute are as follows. In May, 1996, the Reading School District (RSD) sought quotations from bidders to provide twenty-six school buses with drivers to perform school bus transportation services for pupils in the school district. (Compl. ¶ 6.) Such services were to include the provision of transportation for the school district's kindergarten, elementary and secondary students, vocational-technical students, and for field trips and athletic trips. (Compl. ¶ 6.) The bidders were asked to provide quotations for the school years 1996–1997, 1997–1998, 1998–1999 and 1999–2000. (Compl. ¶ 6.) The RSD received four bids: three from private companies "who routinely engage in providing student transportation services," and one from the Berks County Intermediate Unit, # 14 (BCIU). (Compl. ¶ 8.) The BCIU submitted the lowest bid.[2,3] (Compl. ¶ 8.)

One day after the bid opening, the Pennsylvania School Bus Association (PSBA)[4] informed the BCIU and the RSD that "no statutory authority exist[s] to allow the BCIU to engage in the business of transporting nonexceptional students." (Compl. ¶ 9.) It sent letters to the BCIU and its Board of Directors and the RSD and its Board of Directors (collectively Appellees), challenging the legal authority of the BCIU "to bid for and provide the student transportation services in question," and requesting that the BCIU rescind its bid and "desist from such activity in the future." (Compl. ¶ 9.) Notwithstanding these communications, the RSD awarded a contract to the BCIU to perform the services, and the BCIU accepted the award of this contract. (Compl. ¶ 10.)

Reich commenced a civil action in September 1996, by filing a complaint seeking declaratory and injunctive relief against the Appellees. The complaint set forth two claims: (1) the BCIU does not have statutory authority to perform contracts to bus non-special education students; and (2) the BCIU is misusing taxpayer funds to improperly subsidize these contracts. Reich sought a declaratory judgment that the BCIU is not authorized to perform student transportation services for a school district other than those required by law for exceptional and early intervention children, and sought injunctive relief to prevent the BCIU from performing under its existing contract with RSD for non-special education student transportation services. Appellees filed preliminary objections to Reich's complaint, including objections to his standing, which the trial court overruled. Appellees then filed an

---

**1.** As our inquiries here involve questions of law, our review is plenary. *Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000 (2003).

**2.** The unsuccessful bidders were Van Lear Equipment, Inc. of Reading, PA; Gross Equipment Company, Inc. of Bechtelsville, PA; and, A & E Company of Oswego, NY. (Compl. ¶ 8.) Gross Equipment Company, Inc. had provided student transportation services to the RSD for the school years 1992–1993 through 1995–1996. *Id.*

**3.** The BCIU "was forced to expand into enterprise programs [, *e.g.,* "those requiring a fee from the school districts"] ... when Gov. Tom Ridge cut state funding to intermediate units" in 1996. (Reading Eagle Times Article, July 15, 1999, R. 120a.; Dep., K. Robert Hohl, Ed.D., pp. 69–70, R. 122a.)

**4.** The Pennsylvania School Bus Association (PSBA) includes a membership of over 475 individual companies engaged in the business of providing student transportation services to school districts. (Compl. ¶ 9.)

answer and new matter to the complaint. In the new matter, Appellees alleged, *inter alia,* that Reich has "no interest which is different from the interest of any other taxpayer" and, therefore, has no standing to file the action. (Answer ¶¶ 33, 34.)

In 2003, the parties filed cross motions for summary judgment.[5,6] The trial court

heard argument on the motions and, subsequently, entered an opinion and order granting Appellees' motion for summary judgment, and denying Reich's motion.[7] Reich then appealed to this Court.[8]

On appeal, Reich presents two substantive issues for our review.[9] However, because we agree that Reich has no standing

5. This was Appellees' second motion for summary judgment; the first was denied by the trial court in 2001. (Appellees sought interlocutory appellate review of the trial court's denial of their motion, but this Court denied their petition for permission to appeal, by Order dated December 4, 2001, Docket No. 2555 CD 2001.) Summary judgment is appropriate where "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by discovery or expert report...." Pa. R.C.P. No. 1035.2(1). The court is not to decide issues of fact, but merely to determine whether any such issues exist. *Boring v. Erie Insurance Group,* 434 Pa.Super. 40, 641 A.2d 1189 (1994). Summary judgment is also warranted "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce sufficient evidence of facts essential to the cause of action or defense" to submit the question to a jury. Pa. R.C.P. No. 1035.2(2).

6. On June 20, 2003, the trial court granted "Defendants' Motion [Pursuant to Pa. R.C.P. No. 1035.3(b)] to Supplement the Record" in *this* case with the notes of testimony of a May 30, 2003 preliminary injunction hearing in *Spitler, et al. v. Berks County Intermediate Unit, et al.,* Berks County Civil Action No. 03–5351, in which Reich and another taxpayer, Byrl Spitler, sought to enjoin the BCIU from providing pupil transportation services to the Tulpehocken School District. *See* Trial Ct. Op., October 8, 2003, p. 6 n. 2.

7. The trial court found that the BCIU had the statutory authority to provide non-special education pupil transportation services, and that Reich failed to prove that the BCIU was improperly utilizing its Commonwealth subsidies through its accounting practices. The trial court also found that, as a taxpayer in Berks County, Reich had the right to bring his

suit. (Trial Court Op., 10/8/03, at 6.) In a footnote, the trial court noted that it had become aware that Reich was bringing the suit on behalf of the Pennsylvania School Bus Contractors Association, which could not bring the matter in its own right. (Trial Court Op., 10/8/03, p. 6 n. 1) (citing N.T. 5/30/03, pp. 39–40, 52).

8. Three associations filed amicus briefs in support of the BCIU: the Pennsylvania School Boards Association (PSBA), the Pennsylvania Association of School Administrators (PASA), and the Pennsylvania Association of Intermediate Units (PAIU). The PSBA is a voluntary association representing 501 local school districts in the Commonwealth and the members of the school boards of those school districts. (PSBA Amicus Brief, at 1.) The purpose of the association is to "assist local public school entities and promote general interest in the field of public education." *Id.* The PASA is a non-profit association of school superintendents, intermediate unit executive directors and other school administrators. (PASA Amicus Brief, at 1.) The purpose of the association is to "support the general educational welfare of the Commonwealth and to advance educational standards in the schools." *Id.* The PAIU is an association representing the 29 intermediate units in the state of Pennsylvania, and its members are the executive directors of the IUs. (PAIU Amicus Brief, at 1.) The purpose of the association is to provide a "formal mechanism for communication among intermediate units and to foster positive relationships with appropriate state agencies, especially the PA Department of Education." *Id.* The arguments the three associations present are almost identical to those presented by the BCIU.

9. First, Reich argues that the School Code does not authorize Intermediate Units (IUs) to provide busing service to non-special edu-

to litigate these claims, we are precluded from reaching the merits of either of those issues.

 Appellees argued before the trial court, and now argue here,[10] that Reich has not shown a "substantial interest" sufficient to satisfy the general rule for taxpayer standing or the narrow exception to that rule. Our Supreme Court defined "substantial interest" as:

> an interest in the outcome of the suit which surpasses "the common interest of all citizens in procuring obedience to the law." To surpass the common interest, the interest is required to be, at least, substantial, direct, and immediate.

*Application of Biester,* 487 Pa. 438, 442–43, 409 A.2d 848, 851 (1979) (citation omitted). The Court, in addition, provided an exception to the "substantial interest" requirement. That exception warrants the grant of standing to a taxpayer where his or her interest is *not* substantial, direct, and immediate, but the taxpayer can show that: (1) the government action would otherwise go unchallenged; (2) those directly and immediately affected by the complained use of expenditures are beneficially affected and not inclined to challenge the action; (3) judicial relief is appropriate; (4) redress through other channels is unavailable; and (5) no other persons are better situated to assert the claim. *Biester,* 487 Pa. at 446, 409 A.2d at 852–53; *See also Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986).

Reich, conversely, argues that Appellees' standing argument has already been reviewed and dismissed by this Court.

(Reply Br. at 13.) He claims that, as a taxpayer, he has standing to challenge the improper or illegal disposition of public funds, citing *Balsbaugh v. Department of General Services,* 815 A.2d 36 (Pa.Cmwlth. 2003) (holding that, since enactment of the Procurement Code, disappointed bidders have been given standing to protest the solicitation or the award of a contract under the Code without having to assert taxpayer standing). Reich also relies on *Marx v. Lake Lehman School District,* 817 A.2d 1242 (Pa.Cmwlth.2003), a case involving a taxpayer plaintiff, where this Court noted a less burdensome standing requirement for individuals in bidding award cases not brought under the Procurement Code. *Id.* at 1245 (holding that, because competitors do not have standing in bidding award cases and "the process relies upon taxpayers to bring actions ..., the standing requirement is not an onerous one"). In *Marx,* a taxpayer, without any proprietary interest in the disputed contract, was found to possess sufficient interest in the outcome of a bidding award case to be granted standing to appeal. *Marx,* 817 A.2d at 1245. *See also Rainey v. Borough of Derry,* 163 Pa.Cmwlth. 606, 641 A.2d 698, 701 (1994). However, none of the cases cited above by Reich are analogous, because, in the case sub judice, there is no challenge to the actual bidding process or procedure; rather, the appeal involves disputes over authority granted pursuant to the School Code.

 In his complaint, Reich sets forth two claims: (1) that the "[BCIU] does not have the statutory authority to perform contracts to bus non-special education stu-

---

cation students. Second, Reich argues, in the alternative, that the trial court applied the incorrect standard when it evaluated and granted Appellees' motion for summary judgment on the subsidy issue.

10. Unless a party specifically raises the issue in a timely manner, a court cannot raise the issue of standing. *Rainey v. Borough of Derry,* 163 Pa.Cmwlth. 606, 641 A.2d 698, 700–01 (1994).

dents"; and (2) that the "[BCIU] is misusing taxpayer funds appropriated for specific purposes ... to improperly subsidize [IU] contracts to bus non-special education students." (Reich's Brief at 5; *see also* Complaint, ¶¶ 15, 29.) On appeal, Reich summarizes his argument, in pertinent part, as follows:

> Intermediate units providing busing service for non-special education students are acting outside their statutory authority, and the trial court erred in holding otherwise.
>
> Alternatively, the trial court applied the incorrect standard in granting the defendants' motion for summary judgment by not viewing Reich's evidence in the light most favorable to Reich and by not drawing all reasonable inferences from Reich's evidence in his favor.

(Reich's Br. at 11.) Clearly, Reich makes no allegations whatsoever in his complaint or otherwise, that the BCIU violated specific bidding procedures, or any provision of what is colloquially known as the Commonwealth Procurement Code, 62 Pa.C.S. §§ 1701–1751. Rather, Reich alleges, generally, that the BCIU did not have authority—under the School Code—to enter into these busing contracts, and that the BCIU misused Commonwealth subsidies—provided under the School Code—to finance these transportation programs. These broad allegations are not focused on bidding, the process of bidding, or bidding awards. We, therefore, do not consider this to be a "bidding award case." Consequently, Reich is not subject to the standing requirement applied to taxpayers in bidding award cases as described in this Court's opinion in *Marx.* Thus, to obtain standing to sue, Reich must meet the stringent requirements for taxpayer standing as set forth in *Biester,* and show that his interest here is "substantial, direct, and immediate." *Biester,* 487 Pa. at 443, 409 A.2d at 851.

As stated in his complaint, the interest advanced by Reich is similar to that of the taxpayer in the *Biester* case—i.e., "the prevention of a waste of tax revenue as a result of expenditures which will occur and are illegal." [11] *Biester,* 487 Pa. at 443, 409 A.2d at 851. The prevention of a waste of tax revenue, however, has been held to be "an interest which is *not* immediate because the detriment to the taxpayer is too remote since he is not directly or specially affected by the loss." *Id.* at 444, 409 A.2d at 851 (emphasis added). Rather, it is "merely the same interest all citizens have in having others comply with the law or the constitution." *Id.* Consequently, such an interest is not sufficient to confer taxpayer standing on Reich unless he can show that he satisfies the five factors in the narrow exception to the general rule for taxpayer standing. *Consumer Party,* 510 Pa. at 170, 507 A.2d at 329; *Biester,* 487 Pa. at 444, 409 A.2d at 852.

We note first that Reich did not explicitly address the *Biester* factors in his briefs and, thus, failed to show that he could satisfy any of them. Based on our review of the facts and the record, we find that Reich would be unable to establish the first ("the government action would otherwise go unchallenged"), fourth ("redress

---

**11.** However, Reich's purported "interest" here may be misleading; if a court agreed with his substantive argument and subsequently barred the BCIU from providing bus service to non-special education students, Reich and his fellow taxpayers could conceivably pay *more,* not less, in taxes. *See* N.T. of Joseph Kostura, BCIU's Chief Financial Officer, Preliminary Injunction Hearing, June 12, 13 and 20, 2003, pp. 426–28 (responding "Definitely" when posed the question: "Is it accurate to say that because the intermediate unit has contracted transportation, that it's actually lowering the costs and expenses of the special education program?").

through other channels is unavailable") and fifth ("no other persons are better situated to assert the claim") factors of the exception. *See Consumer Party,* 510 Pa. at 170, 507 A.2d at 329.

■ Reich does not meet the first factor because there simply is no support for the premise that the government action here would otherwise go unchallenged. This is not a bidding case where competitors have no standing. *Cf. Marx.* Thus, competitors, or others with a substantial, direct and immediate interest, are not precluded from challenging the propriety of the BCIU's contracts with local school districts to bus their non-special education students. In addition, as discussed below, the BCIU's financial reports and accounting methods are subject to state-level scrutiny by the Department of Education and the Office of the Auditor General.

■ Similarly, Reich does not meet the fourth factor because redress through oth-

er channels *is available at multiple levels.* The Department of Education has been given statutory authority, under the School Code, to issue final orders affecting the property rights of school districts. *Northeastern Educational Intermediate Unit No. 19 v. Commonwealth,* 88 Pa.Cmwlth. 314, 489 A.2d 966, 967 (1985). Thus, questions as to the propriety of the BCIU's ability to enter into contracts to bus non-special education students should be first directed to the Department of Education.[12] Further, each IU is required to submit an annual financial report to the Secretary of Education by the first day of October, along with an auditor's report prepared by an independent auditor who is a CPA or other competent public accountant. *See* 24 P.S. § 9–971.[13] The Secretary of Education can withhold future subsidies if the Secretary determines that an IU has misused Commonwealth funds. *See* 24 P.S. § 25–2552;[14] *Northeastern Educational Intermediate Unit No. 19.* In addition,

---

12. In a letter dated April 22, 1998, the Department of Education, Office of Chief Counsel, responded to the objections of counsel for the Pennsylvania School Bus Association to the Department's proposed reimbursement for IU-provided transportation. The first paragraph of that letter states, *inter alia,* that "the Department remains firm in its belief that intermediate units may contract with school districts to provide general, comprehensive transportation services." (R.R. 89a.)

13. Section 971 of the School Code provides: An annual financial report shall be submitted to the Secretary of Education by each intermediate unit not later than the first day of October, together with an auditor's report prepared by an independent auditor who shall be a certified public accountant or other competent public accountant. All financial accounting and reporting by intermediate units to the Department of Education shall be in accordance with generally accepted accounting and reporting standards.
24 P.S. § 9–971 (Last sentence was added by the Act of May 10, 2000, P.L. 44.)

14. Section 2552 of the School Code provides:

It shall be the duty of the Superintendent of Public Instruction to withhold the payment of all money due any school district out of any appropriation made by the Commonwealth for any purpose, until all reports required by law and due at such time have been filed either with the Department of Public Instruction or other proper authority, whether or not such reports have any bearing on the right to such payment, and until all the school district's records bearing on its rights to reimbursements have been submitted on such uniform forms and in such manner as shall be prescribed by the department. At his discretion, he may, in like manner, withhold any or all appropriations from any district failing or refusing to comply with the laws and regulations of any department of the government of this Commonwealth for preserving the health or safety of pupils enrolled in the public schools.
24 P.S. § 25–2552.

the Auditor General has authority to inspect the financial records of an IU and recommend enforcement action against it, including the withholding of subsidies or initiation of litigation. *See* 72 P.S. § 403; [15] *Commonwealth v. Pennsylvania State University*, 12 Pa.Cmwlth. 561, 317 A.2d 661 (1974), *affirmed*, 463 Pa. 606, 345 A.2d 695 (1975).

■ Finally, Reich does not meet the fifth factor because the agencies discussed above are "better situated" than Reich to assert a claim against an IU. The Secretary of Education, who has been given statutory authority to administer the Department of Education,[16] is a constitutional officer entrusted by Section 1302 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 352,[17] with powers and duties to administer and enforce the school laws of this Commonwealth. *Pittenger v. Union Area School Board*, 24 Pa.Cmwlth. 442, 356 A.2d

866, 868 (1976). Consequently, the Secretary possesses explicit statutory responsibility and authority to respond to challenges to the BCIU's ability to enter into contracts with local school districts to provide transportation services for their non-special education students. And, an agency must be given deference in the administration and interpretation of its own statutory authority. *See* 1 Pa.C.S. § 1921(c)(8). Further, the Department of Education has authority to oversee the utilization and accounting of a Commonwealth subsidy provided to an IU under the School Code, including the power to order "special audits and field audits of accounts" of Pennsylvania's public school entities. *See* 24 P.S. § 25–2553.[18] In fact, the Bureau of School Audits, which reports to the Department of the Auditor General, is composed of agents specifically trained to audit the financial activities of Pennsylvania public school entities, including IUs. Reich, on the other hand, possesses no authority

---

**15.** Section 403 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. § 403, provides:

The Department of the Auditor General shall have the power, and its duty shall be, to audit the accounts and records of every person, association, corporation, and public agency, receiving an appropriation of money, payable out of any fund in the State Treasury, or entitled to receive any portion of any State tax for any purpose whatsoever, as far as may be necessary to satisfy the department that the money received was expended or is being expended for no purpose other than that for which it was paid. Copies of all such audits shall be furnished to the Governor.

If at any time the department shall find that any money received by any person, association, corporation, or public agency, has been expended for any purpose other than that for which it was paid, it shall forthwith notify the Governor, and shall decline to approve any further requisition for the payment of any appropriation, or any further portion of any State tax, to such person, association, corporation or public agency, until an amount equal to that im-

properly expended shall have been expended for the purpose for which the money improperly expended was received from the State Treasury.

**16.** *See* Sections 1 and 2 of the Act of July 23, 1969, P.L. 181, 71 P.S. §§ 1037 and 1038.

**17.** Section 1302 of The Administrative Code, added by Section 1 of the Act of May 15, 1945, P.L. 540, 71 P.S. § 352, provides in pertinent part:

The Department of [Education] shall have the power, and its duty shall be:
(a) To administer all of the laws of this Commonwealth with regard to the establishment, maintenance, and conduct of the public schools....

**18.** Section 2553 of the School Code, added by Section 2 of the Act of July 13, 1957, P.L. 897, provides, in part, that "[t]he comptroller of the Department of [Education] shall perform regular audits and field audits and, in his discretion, may perform special audits and field audits of accounts of all school districts...."

allowing him to conduct his own private "audit" of the BCIU's funds or to challenge the BCIU's spending practices.

Therefore, because he fails to satisfy at least three of the five required factors in the exception to establish taxpayer standing, we hold that Reich lacks standing to litigate his claims. Therefore, on that basis, we affirm the order of the trial court.

## ORDER

NOW, October 18, 2004, the order of the Court of Common Pleas of Berks County in the above-captioned matter is hereby affirmed on the basis that Reich lacked standing to bring the action.