**Lynn McCONVILLE and Dea M. McAlonan, Appellants**

v.

**The CITY OF PHILADELPHIA, and Shelley Smith, individually and in her official capacity as City Solicitor of the City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2013.

Decided Nov. 27, 2013.

Charles C. Sweedler, Philadelphia, for appellants.

Andrew S. Ross, Philadelphia, for appellees.

BEFORE: LEADBETTER, Judge, BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge BROBSON.

This is an appeal from the decision of the Court of Common Pleas of Philadelphia County (trial court) to sustain the preliminary objections of the City of Philadelphia and Shelly R. Smith, individually and in her official capacity as Solicitor of the City of Philadelphia (collectively, City) and dismiss the Amended Complaint (Complaint) of Appellants Lynn McConville (McConville) and Dea M. McAlonan (McAlonan) (collectively, Appellants) for lack of standing. For the reasons set forth below, we affirm in part and reverse in part the trial court's order.

## BACKGROUND

### A. The Complaint

#### 1. The Claims

In their Complaint, Appellants challenge the legality of a 2006 Consent Agreement between the City[1] and various entities connected to the outdoor advertising business (Billboard Companies).[2] The Consent Agreement stems from litigation initiated by the Billboard Companies in the United States District Court for the Eastern District of Pennsylvania against the City, challenging the constitutionality of recently-enacted City ordinances regulating billboards within the City, including a provision that imposed an excise tax on billboard revenues. The nearly 28–page Consent Agreement is comprehensive. For our purposes, however, a paragraph

1. Then–City Solicitor Romulo L. Diaz, Jr. executed the Consent Agreement on behalf of the City.

2. Appellants did not attach a copy of the challenged Consent Agreement to their Complaint. The City, however, attached a copy to its preliminary objections and includes a copy in a Supplemental Reproduced Record (S.R.R.) filed with this Court. We have held

that "where a plaintiff avers the existence of a written agreement and relies upon it to establish his cause of action ..., a defendant may properly annex that agreement without creating an impermissible speaking demurrer since the agreement is a factual matter arising out of the complaint itself." *Martin v. Dep't of Transp.*, 124 Pa.Cmwlth. 625, 556 A.2d 969, 971 (1989).

on page 3 of the Consent Agreement accurately summarizes its purpose and substance:

This Consent Agreement will avert protracted and uncertain litigation concerning substantial constitutional issues which involve the risk of liabilities and significant financial penalties. This Consent Agreement clarifies the application of regulations to the Plaintiffs' conduct of their businesses, assures their compliance with applicable laws, as well as the additional obligations imposed herein, and creates new and specific monetary obligations on Plaintiffs, including obligations for the removal of certain outdoor advertising signs that the City might not otherwise succeed in imposing upon them under law. *Finally, under this Consent Agreement, all parties have agreed to forego their statutory rights under the Philadelphia Code for recourse to the administrative agencies and the Courts, and have agreed to the final determinations of a Special Master with respect to certain disputes arising under this Consent Agreement regarding the lawful status of certain Outdoor Advertising Signs.*

(S.R.R. 3b–4b (emphasis added).) Appellants' Complaint challenges the portion of the Consent Agreement that bypasses existing administrative and judicial remedies that provide a public forum to resolve disputes over the conformity of a billboard with applicable City ordinances. Instead, the Consent Agreement provides for a private contractual remedy to resolve such matters between the City and the Billboard Companies in front of a Special Master and in accordance with the Commercial Arbitration Rules of the American Arbitration Association, or such other rules as the Special Master might propose and to which the City and the Billboard Companies agree. (S.R.R. 15b.)

In Count I of their Complaint, Appellants claim that this contractual remedy deprives them of their due process rights secured under the Fifth and Fourteenth Amendments to the United States Constitution and their right of access to the courts of this Commonwealth. (Reproduced Record (R.R.) 28a.) In Count II, Appellants contend that the Consent Agreement's provisions, both substantive and procedural, are in conflict with duly-enacted City ordinances regulating billboards and challenges thereto. To the extent the Consent Agreement can be said to supersede those ordinances, Appellants claim that the Consent Agreement was "enacted" in violation of the Pennsylvania Sunshine Act, 65 Pa.C.S. §§ 701–716. In Count III, Appellants contend that the Consent Agreement constitutes unlawful contract zoning of billboards within the City. In Count IV, Appellants contend that the Consent Agreement is *void ab initio*— *i.e.*, invalid from the outset. In their prayer for relief, Appellants seek declaratory and injunctive relief and an award of attorneys' fees and expenses for the litigation.

### 2. Alleged Interest of McAlonan

McAlonan owns a commercial property in the City. (R.R. 4a.) On February 12, 2009, a billboard located on a property adjacent to McAlonan's property collapsed onto McAlonan's property, damaging her property and destroying the billboard. (*Id.*) McAlonan takes the position that under applicable City ordinances, the billboard was a nonconforming use, because it was located within 300 feet of a residential district. As such, it could not be reconstructed. (*Id.* 15a.) When H.A. Steen Industries, Inc. (Steen), the owner of the billboard and a party to the Consent Agreement (*id.* 14a), began reconstructing the billboard without any permit, McAlonan complained to the City, which issued a cease and desist order. (*Id.* 16a.) A few

weeks later, Steen resumed reconstruction activities. McAlonan again complained to the City, which issued a notice of violation to Steen. (*Id.*) Thereafter, without notice to McAlonan or a hearing, the City rescinded the violation notice and issued a building permit for the reconstruction of the billboard.

McAlonan complained. In response, according to paragraph 91 of the Complaint, the City "made an oblique reference to an agreement between the Law Department and the billboard owner." (*Id.* 17a.) In that same paragraph of the Complaint, Appellants allege that, "[b]ecause Ms. McAlonan was unaware of the Consent Agreement's existence or terms, she did not understand what the [City] was telling her, or its significance, at that time." (*Id.*)

According to the Complaint, the City has issued an annual license for the billboard every year since its reconstruction. (*Id.* 6a.) In their Complaint, Appellants claim that Steen, in its application for a building permit, materially misrepresented the scope of work to be done on the reconstruction of the billboard. (*Id.* 17a–18a.) Appellants also contend that the City acted improperly when it rescinded the notice of violation without first requiring Steen to file an appeal. (*Id.* 18a.) Finally, they contend the City should have provided McAlonan notice of the rescission and the issuance of the building permit. (*Id.*) Absent from the Complaint, however, is an allegation that McAlonan attempted to raise any of these issues, which go to the propriety of the City's decision to issue the building permit to Steen, before a local agency or in a court of law.

### 3. Alleged Interest of McConville

McConville owns property in the City, and she resides at the property. (R.R. 20a.) From 1996 to July 2006, the skeletal remains of a billboard were located on the roof of another property visible from McConville's. Appellants contend that billboards are not a permitted use at that property, because it is within 300 feet of a residential district and 500 feet of a playground. To the extent the billboard is "grandfathered," Appellants contend that it lost its nonconforming use due to inactivity/abandonment.

In July 2006, McConville observed that the billboard had been reconstructed and placed back into use. She lodged a complaint with the City, which issued a notice of violation to Steen, the billboard's owner. Steen appealed the violation notice. While its appeal was pending, Steen entered into the Consent Agreement. (R.R. 21a.) Steen failed to attend a scheduled hearing on its appeal before the City's Zoning Board of Adjustment (ZBA) in September 2006. The ZBA continued the hearing to November 2006. During that hearing, Steen contended that the City had withdrawn the notice of violation and, therefore, Steen was withdrawing its appeal. (*Id.*) The City, however, indicated that the notice of violation had not yet been withdrawn. The ZBA again continued the hearing, this time until January 2007.

During the January hearing, Steen again sought to withdraw its appeal or continue the matter. The ZBA refused and moved forward with a hearing on Steen's appeal. (*Id.* 21a–22a.) McConville, through counsel, appeared and participated in the hearing before the ZBA. At some point during the hearing, Steen's counsel informed the ZBA of its decision to withdraw the appeal and to proceed, instead, under the Consent Agreement's arbitration provisions. (*Id.* 22a.) Thereafter, the ZBA issued a notice that Steen had withdrawn its appeal of the notice of violation. (*Id.*)

Notwithstanding the foregoing, Appellants allege in their Complaint that Steen

has continued to use the billboard at issue unabated and that the City has issued annual licenses for the use of the billboard. Appellants complain that such conduct is in violation of the law, because once Steen withdrew its appeal of the notice of violation, the notice of violation became conclusive as to that billboard. Specifically, Appellants allege that, by virtue of Steen's discontinuance of its appeal before the ZBA, the violation notice became final. The City, however, refused to recognize the finality of the violation, deferring instead to the Consent Agreement process. Thus, Appellants contend, while McConville ultimately succeeded in opposing Steen's appeal to the ZBA, the Consent Agreement's alternative dispute provisions divested her of that decisive outcome, and, thereby, violated her due process rights.

### B. The Preliminary Objections

In its first preliminary objection, the City contends that Appellants lack standing to challenge the legality of the Consent Agreement. Part of that preliminary objection includes an argument that McAlonan failed to exhaust an available and adequate administrative remedy when she failed to appeal to the appropriate administrative board the issuance of the building permit to Steen. (Certified Record (C.R.) # 26 at 3–4.) The next five preliminary objections (*id.* at 4–7) challenge the legal sufficiency of Appellants' claims in their Complaint. The final preliminary objection seeks to strike Appellants' request for attorneys' fees from the Complaint. (*Id.* at 7.)

On April 24, 2012, the trial court issued an order, sustaining the preliminary objections and dismissing the Complaint with prejudice "for lack of standing and/or legal insufficiency." After Appellants filed their Notice of Appeal, the trial court issued an opinion in support of its order on October 16, 2012. With regard to McAlonan, the trial court concluded that she lacked standing to challenge the Consent Agreement because of a lack of any alleged causal connection between her alleged harm—*i.e.,* the damage caused to her property when the nonconforming billboard fell onto her property and the reconstruction of that billboard—and the Consent Agreement itself. (Trial Ct. Op. at 3.) Moreover, the trial court noted that McAlonan failed to pursue an administrative remedy with respect to her charge that Steen falsified information on its building permit application. (*Id.*) Specifically, the trial court cited Section A–801.1 of the Philadelphia Code, which provides:

Any person who is directly aggrieved by the issuance, transfer, renewal, refusal, suspension, revocation or cancellation of any license issued pursuant to this code and the technical codes (except licenses issued pursuant to the Property Maintenance Code); by a refusal of permit pursuant to this code and the technical codes; or by any notice, order or other action by the code official as a result of any inspection pursuant to this code and the technical codes, shall have the right to appeal to the appropriate technical board as set forth in Section A–802.1.

With respect to McConville, the trial court noted that although McConville can see the offending billboard from her property, she is not an adjacent property owner and does not allege a direct injury from the offending billboard. (Trial Court Op. at 3.) The trial court further concluded that the fact that McConville "attended a zoning board violation hearing" regarding the billboard was not sufficient to establish traditional standing to sue. (*Id.*)

### DISCUSSION

██ Appellants present several questions for review, all of which challenge the

trial court's decision to dismiss the Complaint for lack of standing. Appellants contend that they have pled sufficient facts to establish either "traditional" or "taxpayer" standing to maintain their action against the City. Standing of a party to sue is an issue of law. Our standard of review in this appeal, then, is de novo, and our scope of review is plenary. *Hunt v. Pa. State Police*, 603 Pa. 156, 163, 983 A.2d 627, 631 (2009). For purposes of reviewing the trial court's decision on the City's preliminary objection based on lack of standing, which we interpret as being in the nature of a demurrer under Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure, we will accept as true all well-pleaded facts set forth in the Complaint and any reasonable inferences therefrom. *See Waslow v. Pennsylvania Dep't of Educ.*, 984 A.2d 575, 579 n. 9 (Pa.Cmwlth.2009).

We will first analyze the question of whether Appellants have pled sufficient facts to satisfy the test for what the parties refer to as "traditional" standing to bring this action. "In general, to have standing in a declaratory judgment action, a plaintiff must show that he or she is aggrieved." *Nat'l Rifle Ass'n v. City of Pittsburgh*, 999 A.2d 1256, 1258 (Pa. Cmwlth.2010). As the Supreme Court explained in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), in order to be aggrieved by an action, and, thereby have standing to challenge an action, a party's interest in the subject matter of a lawsuit must be substantial, direct, and immediate. *William Penn Parking*, 464 Pa. at 190, 346 A.2d at 281. According to our Supreme Court,

> [a] "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law.

A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*S. Whitehall Twp. Police Serv. v. S. Whitehall Twp.*, 521 Pa. 82, 86–7, 555 A.2d 793, 795 (1989) (internal citations omitted).

Based on the facts alleged in the Complaint, we conclude that McConville has standing to challenge the legality of the Consent Order. The trial court sustained the preliminary objection based on the fact that McConville did not live adjacent to the billboard to which she objected. The central issue in this case, however, is not whether that billboard was lawful. To the contrary, the issue is whether the Consent Agreement is lawful. These two issues should not be conflated. As set forth above, McConville alleges that she complained about the billboard to the City and that, as a result, the City issued a notice of violation to Steen. Once Steen appealed, McConville did more than simply attend the hearings before the ZBA, as the trial court recounts; rather, she, represented by counsel, fully participated in the hearings. Indeed, based on the allegations in the Complaint, it appears that McConville's active participation prompted Steen to withdraw its appeal of the violation notice in favor of what Steen viewed as a more favorable venue—*i.e.*, arbitration under the Consent Agreement.

The allegations in the Complaint and reasonable inferences therefrom cause us to conclude that McConville was successful in the proceedings before the ZBA and obtained a measure of finality with regard

to the violation notice when Steen withdrew its appeal. McConville's success was fleeting, however, as a result of the Consent Agreement, which apparently provided Steen with an alternative, nonpublic, and, at least to Steen, more favorable venue to resolve the dispute over the nonconforming billboard with the City. The Consent Agreement provided Steen with this alternative venue of obtaining the relief it wanted and eliminated McConville and her lawyer, as well as the ZBA, from Steen's path.

Based on the foregoing, we conclude that Appellants have pled sufficient facts to support the conclusion that McConville has a more particular and substantial interest in challenging the Consent Agreement than that of the common citizen seeking obedience to the law. While the question of whether the City could lawfully enter into the Consent Agreement may be a matter of interest to the general citizenry, McConville alleges *how* Steen employed the Consent Agreement to avoid a public hearing before the ZBA over Steen's appeal of the notice of violation, a hearing in which McConville participated. McConville's interest was directly and immediately affected by the existence and Steen's use of the Consent Agreement. We, therefore, will reverse the portion of the trial court's order dismissing the Complaint as to McConville for lack of standing.

■ We reach a contrary conclusion regarding the standing of McAlonan. Although McAlonan's property was clearly affected by the collapse of a billboard from an adjacent property, the pleadings do not demonstrate that she has a substantial, direct, and immediate interest in challenging the validity of the Consent Agreement. While her interest in the reconstructed billboard may be substantial, the facts as pled do not demonstrate that her interest in the Consent Agreement is substantial, direct, and immediate.

Appellants complain that Steen secured the new building permit based on false representations in a permit application that Steen was seeking only to perform minor repairs, when Steen actually reconstructed the billboard. Appellants do not dispute that McAlonan could have challenged the issuance of the permit on that ground under Section A–801.1 of the Philadelphia Code. Instead, they explain that she did not pursue her administrative remedy because she simply lost faith in the system. Although Appellants attribute that loss of confidence to the Consent Agreement (Appellants' Br. at 24), the averments of the Complaint do not create a clear causal connection between her alleged harm (the issuance of a building permit authorizing reconstruction of the billboard) and the Consent Agreement. Instead, the averments support the conclusion that McAlonan chose not to challenge the building permit and that her choice, not the Consent Agreement, is what prevented her from using existing City ordinances to challenge the reconstruction of the billboard by Steen.

■ Accordingly, we conclude that the trial court did not err in dismissing the Complaint as to McAlonan for lack of standing. Because, however, we cannot definitively rule out the possibility that McAlonan, if given an opportunity, may be able to allege facts to show an interest in the Consent Agreement that would be sufficient to afford her standing to challenge its validity, we will affirm the trial court's decision to dismiss McAlonan from the lawsuit, but modify the trial court's order so as to be without prejudice. The trial court should afford Appellants reasonable time to amend their Complaint, if they can, to allege additional facts that would be sufficient to afford McAlonan standing in

this matter under our analysis in this opinion.

 Finally, we will briefly examine the question of whether McAlonan should be a party under the alternative theory of taxpayer standing. In *Reich v. The Berks County Intermediate Unit No. 14*, 861 A.2d 1005 (Pa.Cmwlth.2004), *appeal denied*, 584 Pa. 689, 881 A.2d 821 (2005), we discussed the taxpayer standing exception the Supreme Court created in *Application of Biester*, 487 Pa. 438, 409 A.2d 848 (1979), to the traditional standing requirement that a party have a "substantial interest:"

> That exception warrants the grant of standing to a taxpayer where his or her interest is *not* substantial, direct, and immediate, but the taxpayer can show that: (1) the government action would otherwise go unchallenged; (2) those directly and immediately affected by the complained use of expenditures are beneficially affected and not inclined to challenge the action; (3) judicial relief is appropriate; (4) redress through other channels is unavailable; and (5) *no other persons are better situated to assert the claim. Biester*, 487 Pa. at 446, 409 A.2d at 852–53.

*Reich*, 861 A.2d at 1009 (second emphasis added). Because we have concluded above that McConville has alleged a substantial, direct, and immediate interest adversely affected by the Consent Agreement, McConville is better situated than McAlonan to pursue the action below. We, therefore, will not apply the taxpayer standing exception in this case to reverse the trial court's decision as to McAlonan's standing.

## CONCLUSION

For the reasons set forth above, the trial court's order dismissing the Complaint due to lack of standing is affirmed but modified as to McAlonan, so as to be without prejudice, and reversed as to McConville.

## *ORDER*

AND NOW, this 27th day of November, 2013, the order of the Court of Common Pleas of Philadelphia County is REVERSED as to Appellant Lynn McConville. The order is AFFIRMED as to Appellant Dea M. McAlonan, but modified so as to be without prejudice. The trial court shall afford Appellants reasonable time to amend their Complaint consistent with the accompanying Opinion.