# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Highley and Brian Hurst,   :
                Petitioners   :
  :
         v.   :  No. 36 M.D. 2018
  :  Argued: September 12, 2018
Commonwealth of Pennsylvania   :
Department of Transportation,   :
Leslie M. Richards, Individually and   :
in her Capacity as Secretary of   :
Department of Transportation,   :
Kenneth McClain, Individually and   :
in his Capacity as District Executive   :
for PennDOT Engineering District   :
6-0 and Contracting Officer for all   :
District 6-0 Construction Contracts,   :
              Respondents   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY JUDGE BROBSON        FILED: October 15, 2018


Richard Highley and Brian Hurst (collectively Petitioners) are employees of Allen Myers, LP (Myers), a nonunion highway construction contractor. Petitioners filed a petition for review in the nature of a complaint in equity to challenge a construction project in Montgomery County. Currently before this Court for disposition are the preliminary objections of the Commonwealth of Pennsylvania, Department of Transportation (PennDOT), Secretary of

Transportation Leslie M. Richards, and PennDOT's District Executive Kenneth McClain (collectively, Commonwealth Respondents). Commonwealth Respondents object on the grounds that Petitioners lack standing and their claims are barred by sovereign immunity. For the reasons set forth below, we sustain the first preliminary objection by Commonwealth Respondents and dismiss the petition for review.

## I. BACKGROUND

In their petition for review, Petitioners aver that in 2013, PennDOT began making improvements to Markley Street/U.S. 202 South in Norristown, Montgomery County (Markley Street Project). J.D. Eckman won the bid for the first part of the Markley Street project, underbidding the closest union contractor by more than $500,000. J.D. Eckman completed the first part of the Markley Street Project a year ahead of schedule. Petitioners point out that the bid solicitation for the first part of the Markley Street Project did not require contractors to sign a project labor agreement (PLA) as a condition of bidding.

Petitioners also aver that, in August 2017, PennDOT issued a bid solicitation for Contract No. 80021, the second part of the Markley Street Project. PennDOT's August bid solicitation provided that all contractors were required to sign a PLA with the Building and Construction Council of Philadelphia and Vicinity (Building and Construction Council) as a condition of bidding on the project. Under that PLA, contractors were bound to the collective bargaining agreements (CBAs) between various local unions and the Building and Construction Council. Multiple contractors, both union and nonunion, filed taxpayer lawsuits, bid protests, and a motion for preliminary injunction to challenge the August bid solicitation. By the end of August 2017, PennDOT withdrew its August bid solicitation.

2

Petitioners further aver that, in December 2017, PennDOT issued another bid solicitation for Contract No. 80021. The December bid solicitation also required contractors to sign a revised PLA with the Building and Construction Council. The revised PLA again binds contractors to the CBAs between the Building and Construction Council and 11 local unions. The revised PLA requires craft labor personnel employed to be hired through the 11 local unions. Finally, differing from the original PLA, the revised PLA provides that if the successful bidder already has a CBA with United Steelworkers, that bidder is not subject to the hiring requirements of the revised PLA and is instead permitted to use its United Steelworkers workforce.[1]

Petitioners allege standing as employees of Myers—a company that would have bid on this contract if the revised PLA was not a condition of bidding. Both are highway construction workers with prior experience working on PennDOT roadway projects. Petitioners additionally allege that they have standing as taxpaying residents of Montgomery County.

Petitioners filed the subject petition for review, asking this Court to enjoin PennDOT from requiring contractors to sign the revised PLA as a condition for bidding and performing work on the Markley Street Project. Petitioners allege that the revised PLA precludes nonunion contractors from bidding on the Markley Street Project and applies different standards to different bidders. As such, Petitioners allege that PennDOT's imposition of the requirement that contractors

---

[1] Petitioners suggest in their petition for review that the original PLA eliminated the candidacy of several union contractors that had already signed a CBA with United Steelworkers, because if those union contractors signed the original PLA, then they would be in violation of their CBA with United Steelworkers and subject to immediate sanctions. (Pet. at ¶ 5.) The petition for review implies that PennDOT revised the PLA to be more union-contractor-friendly.

3

sign the revised PLA violates the Commonwealth Procurement Code[2] and the State Highway Law.[3]

Commonwealth Respondents filed two preliminary objections. First, Commonwealth Respondents averred that Petitioners lack standing under both the requirements for traditional standing and for the taxpayer exception to traditional standing. Second, Commonwealth Respondents averred that Petitioners' claims are barred by sovereign immunity under our Supreme Court's decision in *Scientific Games International, Inc. v. Department of Revenue*, 66 A.3d 740 (Pa. 2013).[4]

## II. DISCUSSION

Setting the stage for our analysis is the standard for preliminary objections. In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of the petitioner. *Id.*

### A. Standing

With the enactment of the Procurement Code in 1998 and its subsequent amendments, bidders, offerors, prospective bidders or offerors, and prospective

---

[2] 62 Pa. C.S. §§ 101-2311.

[3] Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §§ 670-101 to -1102.

[4] In their petition for review, Petitioners also seek attorney's fees, and Commonwealth Respondents object to this request on the basis that Petitioners did not allege facts that provide a basis for an award for attorney's fees. In their brief in the instant appeal, Petitioners agree with Commonwealth Respondents that their request should be stricken.

4

contractors have a statutory right to protest the solicitation or award of a contract with the head of a purchasing agency or his designee. 62 Pa. C.S. § 1711.1(a). The Procurement Code both reaffirms the Commonwealth's sovereign immunity and waives sovereign immunity for bid protests under Section 1711.1 of the Procurement Code. 62 Pa. C.S. § 1702. While Sections 1711.1 and 1702 of the Procurement Code govern bidders, offerors, prospective bidders or offerors, and prospective contractors, Petitioners do not fall within any of those categories. They are employees of a prospective bidder, Myers, and they bring their suit in equity as taxpayers. The question, then, is whether they have standing under the traditional standing requirements or the taxpayer exception and, if so, whether their claims are nonetheless barred by sovereign immunity.

### 1. Traditional Standing

Prior to judicial resolution of a dispute, an individual must demonstrate that he has standing to bring the action. *Pittsburgh Palisades Park, LLC v. Cmwlth.*, 888 A.2d 655, 659 (Pa. 2005). That is, the party initiating legal action must show that he has been "aggrieved"—*i.e.*, that he has a "substantial, direct, and immediate interest in the outcome of the litigation." *Id.* at 659-60. An interest is "substantial" if it surpasses the common interest of all citizens in procuring obedience to the law. *Id.* at 660. An interest is "direct" where it shows that the matter complained of caused harm to the party's interest and "immediate" if the causal connection is not remote or speculative. *Id.* "The keystone to standing in these terms is that the person must be negatively impacted in some real and direct fashion." *Id.*

Here, Petitioners argue that they meet these traditional standing requirements. They contend that their interest in the project is substantial and surpasses the common interest of all Pennsylvanians, because, as long-time

5

construction workers dependent on government construction contracts, their livelihood is affected more than that of the average citizen. They suggest that they may be forced to join a union, that they may not be accepted into union membership, and that they still might not work on this project. Petitioners contend that their interest is direct because there would be no harm to their interest in the absence of the PLA requirement. Finally, Petitioners contend that their interest is immediate because their injury stems directly from the PLA requirement in the bid solicitation.

In response, Commonwealth Respondents argue that the alleged harm to Petitioners depends on a "string of contingencies." (Commonwealth Respondents' Br. at 10.) Commonwealth Respondents point out that Myers has not even bid on the project. Myers would have to not only bid on the project, Commonwealth Respondents argue, but Myers would have to win the contract and assign Petitioners to work on the contract. Commonwealth Respondents argue that any interest of Petitioners is too attenuated to confer standing.

We agree with Commonwealth Respondents that Petitioners do not have an interest that is substantial, direct, and immediate. Neither bid on this project, and the only relation they have to the bidding process is that their employer *may* have submitted a bid if there were no PLA requirement. While there are conceivable scenarios where Petitioners would be employed to work on this project, there are just as many scenarios where they would not. Both could be terminated tomorrow; both could quit and work for another contractor. Both could continue working for Myers but be assigned to different construction projects. Petitioners are not, therefore, sufficiently aggrieved to meet the requirements for traditional standing.

6

## 2. *Taxpayer Standing*

This is not the end of the inquiry, however, as the Pennsylvania Supreme Court articulated an exception to the traditional requirements for standing in *Application of Biester*, 409 A.2d 848 (Pa. 1979). Under this exception, a taxpayer has standing to challenge a governmental action provided he satisfies the following requirements:

> (1) the governmental action would otherwise go unchallenged;
>
> (2) *those directly and immediately affected by the complained of matter are beneficially affected and not inclined to challenge the action;*
>
> (3) judicial relief is appropriate;
>
> (4) redress through other channels is unavailable; and
>
> (5) no other persons are better situated to assert the claim.

*Pittsburgh Palisades Park*, 888 A.2d at 662 (summarizing *Biester* taxpayer exception standing requirements) (emphasis added). The Supreme Court stressed that the impetus behind the taxpayer standing exception was the desire to "enable the citizenry to challenge government action which would otherwise go unchallenged in the courts because of the standing requirement." *Id.* at 661.

We need not be too exhaustive in addressing this exception, however, as Petitioners are unable to meet the first two *Biester* requirements. Two nonunion contractors, J.D. Eckman and Myers, the latter being Petitioners' employer, have filed bid protests for this exact government contract under Section 1711.1 of the Procurement Code.[5] *See* 62 Pa. C.S. § 1711.1 (establishing the right to challenge procurements by Commonwealth agencies). The same counsel that represents

---

[5] Docketed with this Court at 313 C.D. 2018 and 314 C.D. 2018, respectively.

Myers in that bid protest represents Petitioners in this matter. In other words, the bid for this project is being challenged in pending litigation, and Petitioners know as much. There is simply no danger that the government action at issue would otherwise go unchallenged. For this same reason, this case fails the second prong of *Biester*. Based on the allegations in the petition for review, it is clear to this Court that Petitioners' employer, Myers, as a nonunion contractor, is directly and immediately affected by the PLA requirement in the bid solicitation. As evidenced by Myers' bid protest, it neither considers itself beneficially affected by the PLA requirement nor was it inclined to refrain from challenging the inclusion of the PLA mandate. Accordingly, as Petitioners cannot satisfy the first two prongs of *Biester*, they do not have taxpayer standing to maintain this action.

### 3. Cases from this Court

Petitioners argue that there is, in fact, a third type of standing available to them as taxpayers under the precedent of this Court. They argue that they meet the standing requirements in the specific context of a taxpayer in a bidding award case, citing *Brayman Construction Corporation v. Department of Transportation* (Pa. Cmwlth., No. 527 M.D. 2008, filed February 17, 2009), *aff'd*, 13 A.3d 925 (Pa. 2011); *Reich v. Berks County Intermediate Unit No. 14*, 861 A.2d 1005 (Pa. Cmwlth. 2004), *appeal denied*, 881 A.2d 821 (Pa. 2005); *Marx v. Lake Lehman School District*, 817 A.2d 1242 (Pa. Cmwlth. 2003); and *Balsbaugh v. Department of General Services*, 815 A.2d 36 (Pa. Cmwlth.), *aff'd per curiam*, 815 A.2d 628 (Pa. 2003). Petitioners argue that, because they are challenging a bid award for a contract with PennDOT, they do not need to meet the 5-prong test in *Biester*. We address these cases in turn, but note at the outset that Petitioners are mistaken; these cases do not confer a third option for standing.

8

In *Brayman*, a construction company and its president brought suit as taxpayers to challenge PennDOT's use of a "Design-Build Best Value" program during the bidding process. *Brayman*, slip op. at 1 n.1. Relevant to the instant case, this Court mentioned, in passing, that taxpayers have standing to bring an action aimed at preventing unauthorized or unlawful expenditure of money because taxpayers have an interest in public funds and bidders do not have standing to challenge an award.[6] *Id.* Standing was so undeveloped in *Brayman* that, on appeal, the Pennsylvania Supreme Court determined that PennDOT waived the issue of whether the company and president lacked standing to challenge the bidding process. *Brayman Constr. Corp.*, 13 A.3d at 931.

*Brayman* is unhelpful to Petitioners for several reasons. First, *Brayman* was an unreported, nonbinding decision by this Court.[7] Second, the Court mentioned standing in *Brayman* in passing, but it was not a central issue of the case. PennDOT did not contest standing in *Brayman*, as evinced by the Supreme Court's holding that PennDOT waived that issue. There was no standing analysis, by this Court or the Supreme Court on appeal, that could aid us in the instant matter. Third, the footnote in our opinion in *Brayman* that mentioned that the construction company and its president had standing *as taxpayers* appears to have done so in part because they could not challenge the award as disappointed bidders. Here, in contrast, that is clearly not the case, so what little standing analysis there was in *Brayman* does not

---

[6] It is unclear why this Court's opinion in *Brayman* determined that bidders do not have standing to challenge an award. Given the enactment of the Procurement Code in 1998, the company and its president in *Brayman* likely did have standing as prospective bidders under Section 1711.1 of the Procurement Code, 62 Pa. C.S. § 1711.1.

[7] Pursuant to Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a), an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent."

9

apply. Two prospective bidders, Myers and J.D. Eckman, have already challenged the December bid solicitation.

In *Reich*, we discussed the taxpayer standing exception in the context of a taxpayer challenging the authority of an intermediate unit to enter into a busing contract with the taxpayer's local school district. We distinguished the school district taxpayer's case from those of disappointed bidders by the nature of the action brought in *Reich*. We explained that the school district taxpayer was challenging the intermediate unit's authority not the award of a bid with the Commonwealth. As a result, we applied the 5-prong test set forth in *Biester* and held that the taxpayer resident of that school district lacked standing.

*Reich* is inapplicable because, like *Brayman*, there is no holding or determination regarding taxpayer standing in a bidding context.[8] In fact, Petitioners only cite to *Reich* for its reference to other cases that are, again, readily distinguished.

*Reich* primarily addressed and distinguished *Marx*. In *Marx*, we addressed taxpayer standing in the context of a challenge to a bid award for electrical work for a school district. This Court determined that there was a relaxed standard for taxpayers to challenge bid awards and held that the taxpayer in *Marx* met that standard. Paramount to that determination was our reasoning that "*because competitors are not granted standing* in bidding award cases, the process relies upon taxpayers to bring actions" to challenge the procurement. *Marx*, 817 A.2d at 1245 (emphasis added). *Marx* is distinguishable because there is no bar in this case that prevents competitors or bidders from challenging the bidding process for the

---

[8] Petitioners also rely on *On-Point Technology Systems, Incorporated v. Department of Revenue*, 753 A.2d 911 (Pa. Cmwlth. 2000), which is inapplicable for the same reason that *Brayman* and *Reich* are. There was no standing determination in *On-Point Technology*. Instead, this Court determined that the period for challenging a bid award did not apply to taxpayers that brought a suit in equity to challenge a bid award; it applied only to disappointed bidders.

10

Markley Street Project; there is no doubt they have standing. Myers and J.D. Eckman have already demonstrated that as they both mounted challenges against the requirements surrounding the December bid solicitation and the revised PLA. The reasoning in *Marx* does not apply here because disappointed bidders have standing under the Procurement Code to challenge an award of a bid by a Commonwealth agency. 62 Pa. C.S. § 1711.1; *see also Reich*, 861 A.2d at 1009 (noting that challenge to bidding award in *Marx* was *not* brought under Procurement Code).

In *Balsbaugh*, two contractors bid on a solicitation by the Department of General Services (DGS) for a new chemistry building at Pennsylvania State University. The losing contractor submitted a bid protest with DGS, arguing that the winning contractor's bid was defective in that it was unsigned. DGS denied that bid protest, and the losing contractor did not appeal from that decision. Subsequently, employees of a subcontractor used by the losing contractor brought a complaint in equity in this Court's original jurisdiction. DGS argued that the subcontractor employees lacked standing because the enactment of the Procurement Code granted a statutory remedy to disappointed bidders challenging an award of a government contract. We rejected that argument and held:

> Here, there is no dispute that [the subcontractor employees] are taxpayers in the Commonwealth. Because they have filed a complaint in equity with this Court, they have standing to bring this action.

*Balsbaugh*, 815 A.2d at 40. We explained that while the enactment of the Procurement Code provided standing to disappointed bidders, it did not take away the right of taxpayers to bring an action in equity before this Court.

*Balsbaugh* undoubtedly bears similarities with the case *sub judice*: the government party was a Commonwealth agency, rather than a political subdivision, so the contract was governed by the Procurement Code; the petitioners were

11

employees of a subcontractor and thus employees of an entity that did not actually bid on the solicitation; and the disappointed bidder, the general contractor, did file a bid protest, thus evincing the ability to challenge the government action.

There are crucial differences, however, between this matter and *Balsbaugh*. In *Balsbaugh*, DGS argued that the subcontractor employees lacked standing because they were "straw parties" for the general contractor, and because the exclusive remedy was for the general contractor to bring a challenge under the Procurement Code. This Court held that the subcontractor employees did have standing in light of *that* argument, but we did not employ an analysis of the factors set forth in *Biester*. It appears we did not have cause to do so, and we can only guess why—perhaps *Biester* was not thoroughly developed in the parties' briefs. Taxpayer standing under *Biester* is briefed in the matter now before this Court, and we are bound as an intermediate court to follow our Supreme Court's precedent.

While the enactment of the Procurement Code did not take away the right of taxpayers to bring an action in equity in our original jurisdiction, taxpayers still must satisfy *Biester* to do so. For the reasons set forth above, Petitioners do not satisfy the Supreme Court's test for taxpayer standing.

## B. Sovereign Immunity

Commonwealth Respondents also object to the petition for review on the ground that Petitioners' claims are barred by sovereign immunity under our Supreme Court's decision in *Scientific Games*. Because we have decided that Petitioners lack standing, we need not address this issue.

## III. CONCLUSION

For the reasons discussed above, Petitioners lack standing to bring their petition for review under traditional standing requirements or the taxpayer

12

exception. We will, therefore, sustain Commonwealth Respondents' first preliminary objection and dismiss Petitioners' petition for review.

_____
P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Highley and Brian Hurst,    :
                      Petitioners    :
                                   :

          v.                   :   No. 36 M.D. 2018
                                   :

Commonwealth of Pennsylvania    :
Department of Transportation,     :
Leslie M. Richards, Individually and  :
in her Capacity as Secretary of     :
Department of Transportation,     :
Kenneth McClain, Individually and   :
in his Capacity as District Executive  :
for PennDOT Engineering District   :
6-0 and Contracting Officer for all    :
District 6-0 Construction Contracts,  :
                    Respondents   :

# **O R D E R**

AND NOW, this 15th day of October, 2018, the preliminary objection by the Commonwealth of Pennsylvania, Department of Transportation (PennDOT), Secretary of Transportation Leslie M. Richards, and PennDOT Executive Director Kenneth McClain to the petition for review based on lack of standing is SUSTAINED, and the petition for review is DISMISSED with prejudice.

 

                                    _____

                                    P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Highley and Brian Hurst, :
                    Petitioners :
                                 :
                                 :
         v.                      : No. 36 M.D. 2018
                                 : Argued: September 12, 2018
Commonwealth of Pennsylvania     :
Department of Transportation,    :
Leslie M. Richards, Individually and :
in her Capacity as Secretary of  :
Department of Transportation,    :
Kenneth McClain, Individually and :
in his Capacity as District Executive :
for PennDOT Engineering District 6-0 :
and Contracting Officer for all District :
6-0 Construction Contracts,      :
                    Respondents  :


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
         HONORABLE PATRICIA A. McCULLOUGH, Judge
         HONORABLE JAMES GARDNER COLINS, Senior Judge


**DISSENTING OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  October 15, 2018**


I respectfully dissent from the well-researched, well-written opinion of the majority.  However, I cannot agree that we should disregard *Balsbaugh v. Department of General Services*, 815 A.2d 36 (Pa. Cmwlth.), *aff'd per curiam*, 815 A.2d 628 (Pa. 2003), as precedent and, therefore, would find that Petitioners have standing in equity to challenge the award of the contract in question.

Therefore, I would overrule the preliminary objections.


_____
**JAMES GARDNER COLINS, Senior Judge**