IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Pizzuti, Individually and as : 
the Executrix of the Estate of Thomas : 
Pizzuti, Deceased, as assignee of : 
Mary Christine Dunham, the : 
Executrix of the Estate of Douglas A. : 
Dunham, MD, : 
                 Petitioner : 
                               : 
        v. : No. 206 M.D. 2021
                             : Argued: February 7, 2022
Pennsylvania Insurance Department, : 
Medical Care Availability and : 
Reduction of Error Fund; Care : 
Professional Liability Association, : 
LLC d/b/a Care Risk Retention : 
Group, Inc.; Trinity Physician : 
Financial & Insurance Services; : 
and Joseph Hong, : 
                 Respondents : 

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: March 4, 2022

Michele Pizzuti, Individually and as the Executrix of the Estate of Thomas Pizzuti, Deceased, as assignee of Mary Christine Dunham, the Executrix of the Estate of Douglas A. Dunham, M.D., has filed in this Court's original jurisdiction a Petition for Review in the Nature of a Complaint for Declaratory Judgment (Petition for Review) against the Pennsylvania Insurance Department, Medical Care

Availability and Reduction of Error Fund (MCARE Fund),[1] Care Professional Liability Association, LLC d/b/a Care Risk Retention Group, Inc. (Care), and Trinity Physician Financial and Insurance Services and Joseph Hong (together, Trinity). The MCARE Fund, Care, and Trinity have each filed Preliminary Objections to the Petition for Review, asserting various bases for dismissal of this action.

For the reasons that follow, we: overrule in part and sustain in part the MCARE Fund's Preliminary Objections; overrule in part and sustain in part Care's Preliminary Objections; sustain Trinity's Preliminary Objections; and strike from the Petition for Review Ms. Pizzuti's demand for attorneys' fees and costs stemming from the present action.

## Facts and Procedural History

### 1. Background

This insurance coverage action stems from a medical malpractice lawsuit filed by Ms. Pizzuti and her late husband, Thomas M. Pizzuti, against the Estate of Douglas A. Dunham, M.D. (Dunham Estate) in the Court of Common Pleas of Washington County (Trial Court).

Dr. Dunham was previously Mr. Pizzuti's primary care physician. In March 2013, Dr. Dunham ordered a prostate-specific antigen (PSA) test for Mr. Pizzuti, which showed that his PSA level was abnormally elevated at 5.2 ng/mL (the normal range is 0.0 to 4.0 ng/mL). In September 2013, Dr. Dunham ordered another PSA test, which showed that Mr. Pizzuti's PSA level was abnormally elevated at 8.8 ng/mL. Dr. Dunham did not inform Mr. Pizzuti of the result of either test. Later

---

[1] "The MCARE Fund[] . . . is a statutory excess carrier that provides excess medical malpractice insurance coverage to the extent a health care provider's liability exceeds its basic coverage in effect at the time of an occurrence." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 680 n.2 (Pa. 2009).

that year, following a federal criminal investigation, Dr. Dunham voluntarily surrendered his medical license and closed his practice.[2]

In 2013, upon learning that Dr. Dunham was being criminally investigated, Mr. Pizzuti began treating with a new primary care physician. The new physician attempted to obtain Mr. Pizzuti's medical records from Dr. Dunham but was unsuccessful.

On December 12, 2016, the new physician ordered laboratory work for Mr. Pizzuti, including a PSA test. At that time, Mr. Pizzuti's PSA level was abnormally elevated at 1,219 ng/mL. Mr. Pizzuti's physician referred him to a urologist, who diagnosed him with Stage 4 prostate cancer. Despite medical treatment, Mr. Pizzuti's cancer progressed, and he died on January 3, 2021.

After surrendering his medical license in 2013, Dr. Dunham purchased an extended reporting endorsement (Tail Policy)[3] on his professional liability insurance policy with Care. The Tail Policy provided a four-year extended coverage period, which expired on September 19, 2017. Dr. Dunham purchased the Tail Policy

---

[2] Ms. Pizzuti avers that "Dr. Dunham . . . voluntarily surrendered his medical license for illegally selling drug samples." Pet. for Rev. ¶ 22.

[3] This type of coverage is commonly known as "tail" coverage. Our Court has explained the types of medical professional liability policies as follows:

> A claims policy provides coverage for claims filed when the policy is in effect. An occurrence policy covers claims related to acts that occurred while the policy is in effect, regardless of when the claims are filed. *A tail policy provides coverage for claims filed after a claims policy lapsed if the claims are related to acts that occurred while the claims policy was in effect*.

*W. Penn Allegheny Health Sys. v. Med. Care Availability & Reduction of Error Fund*, 11 A.3d 598, 603 n.8 (Pa. Cmwlth. 2010) (internal citations omitted) (emphasis added), *aff'd*, 23 A.3d 1052 (Pa. 2011). In other words, tail coverage extends the reporting period for claims made after a professional liability policy ends, but only for acts occurring during the original policy period.

through Trinity and its insurance broker, Mr. Hong. Dr. Dunham died on February 28, 2018.

## 2. Trial Court Litigation

On September 24, 2018, the Pizzutis filed a medical malpractice action against the Dunham Estate in the Trial Court.

Thereafter, the Dunham Estate submitted a claim for defense and indemnity of the underlying action to Dr. Dunham's professional liability insurance carrier, Care, which denied coverage because the underlying action commenced more than one year after the Tail Policy expired. The Dunham Estate then submitted a claim to the MCARE Fund for defense and indemnity of the underlying action, which also declined to defend or indemnify the Dunham Estate.

On September 24, 2019, the Pizzutis and the Dunham Estate entered into a Settlement and Forbearance Agreement, wherein they agreed to settle the underlying medical malpractice action for $1,000,000. Pet. for Rev., Ex. B. They also agreed that the Dunham Estate would assign its claims for professional liability insurance coverage against Care, the MCARE Fund, and Trinity to the Pizzutis. *Id.*

## 3. Proceedings Before This Court

On June 25, 2021, Ms. Pizzuti, individually and as Executrix of Mr. Pizzuti's Estate, filed a Petition for Review with this Court, seeking "a determination that the MCARE Fund improperly denied MCARE Fund coverage and a defense to [the] Dunham[] Estate and/or a determination that C[are], Trinity Insurance and/or Mr. Hong breached their duties and negligently failed to secure and/or provide the required insurance coverage" under Section 715(d) of the Medical Care Availability and Reduction of Error Act (MCARE Act), Act of March 20, 2002, P.L. 154, *as*

4

*amended*, 40 P.S. § 1303.715(d).[4]  Pet. for Rev. ¶ 36.  Ms. Pizzuti asserts that the MCARE Fund, Care, or Trinity is obligated to pay $1,000,000 on behalf of the Dunham Estate to her.  *Id.* ¶ 35.  Specifically, Ms. Pizzuti avers:

> 10. At all times material hereto, per the MCARE Act, the MCARE Fund was statutorily required to provide [the] Dunham[] Estate professional liability coverage as set forth in the MCARE Act including costs of defense and $1,000,000.00 in insurance coverage.

> 11. In the alternative, . . . Dr. Dunham's underlying insurance carrier, [Care], was statutorily required to provide extended coverage to Dr. Dunham [pursuant to Section 715(d) of the MCARE Act] . . . .

> . . . .

> 13. C[are] had a duty to provide Dr. Dunham with an insurance policy that met the requirements of the MCARE Act; more specifically to provide indemnity and defense for claims asserted against Dr. Dunham for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.

> . . . .

> 15. As the insurance agency, Trinity . . . had a duty to ensure that C[are] provided Dr. Dunham with an insurance policy that met the requirements of the MCARE Act; more specifically to provide indemnity and defense for claims asserted against Dr. Dunham for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.

> . . . .

---

[4] Section 715(d) of the MCARE Act states, in relevant part, that "*all medical professional liability insurance policies issued on or after January 1, 2006, shall provide indemnity and defense for claims asserted against a health care provider for a . . . tort which occurs four or more years after the . . . tort occurred* and after December 31, 2005."  40 P.S. § 1303.715(d) (emphasis added).

5

17. As the insurance broker, Mr. Hong had a duty to ensure that C[are] provided Dr. Dunham with an insurance policy that met the requirements of the MCARE Act; more specifically to provide indemnity and defense for claims asserted against Dr. Dunham for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.

*Id.* ¶¶ 10-11, 13, 15, & 17.

In her prayer for relief, Ms. Pizzuti asks this Court to enter judgment in her favor as follows:

a. Adjudicating and decreeing that one, some and/or all [Respondents] are obligated to pay the $1,000,000.00 settlement;

b. Awarding [Ms. Pizzuti] attorney[s'] fees and costs of suit incurred in pursuing coverage for the $1,000,000.00 settlement;

c. Awarding [Ms. Pizzuti] attorney[s'] fees and costs of defense incurred by the [Dunham] Estate in the underlying action; and

d. Granting [Ms. Pizzuti] such other relief as the Court may deem just and equitable.

Pet. for Rev. at 11 (unpaginated).

Care, the MCARE Fund, and Trinity have each filed Preliminary Objections to the Petition for Review,[5] asserting the following objections:

- Care: Care had no obligation to defend the Dunham Estate because the underlying medical malpractice action was filed more than one year after the Tail Policy expired; Ms. Pizzuti's demand for attorneys' fees and costs stemming from this action should be stricken; the Petition for Review lacks specificity; the Petition for Review fails to conform with

---

[5] Care, the MCARE Fund, and Trinity filed their Preliminary Objections on July 26, 2021, August 17, 2021, and October 5, 2021, respectively.

the Pennsylvania Rules of Civil Procedure; and Ms. Pizzuti's demand for "such other relief" should be stricken.

- <u>MCARE Fund</u>: Under the MCARE Act, the MCARE Fund had no obligation to defend or indemnify the Dunham Estate in the underlying medical malpractice action; and Ms. Pizzuti's demand for attorneys' fees and costs stemming from this action should be stricken.

- <u>Trinity</u>: Ms. Pizzuti filed her negligence claims against Trinity beyond the two-year statute of limitations; and Ms. Pizzuti's demand for attorneys' fees and costs stemming from this action should be stricken.

All parties have filed briefs in support of their respective positions with this Court, and this Court heard argument on the Preliminary Objections on February 7, 2022.

## <u>Analysis</u>

In ruling on preliminary objections, this Court must "accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that [this Court] may draw from the averments." *Highley v. Dep't of Transp.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018). However, we are "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* This Court should sustain preliminary objections only where "the law makes clear that the petitioner[s] cannot succeed on [their] claim[s]." *Id.* at 1083. "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007).

**1. Care's Preliminary Objections**

**a. Failure to State Legally Sufficient Claim**

First, Care asserts that the Petition for Review fails to state a legally sufficient claim against it because Care had no obligation to defend or indemnify the Dunham Estate under Dr. Dunham's professional liability policy.[6] According to Care, an insurer's duty to defend and indemnify its insured arises only if the policy is in effect at the time the claim is made. Care asserts that Dr. Dunham's Tail Policy expired on September 19, 2017, *see* Pet. for Rev. ¶ 26, and the Pizzutis did not file the underlying malpractice action until one year later, on September 24, 2018. Because the Tail Policy was no longer in effect, Care contends that it had no duty defend or indemnify the Dunham Estate under the Tail Policy.

In support of this Preliminary Objection, Care relies on case law holding that an insurer's duties under an insurance policy are not triggered unless the policy is in effect at the time the claim is made. *See* Care Br. in Support of Prelim. Objs. at 6-7 (citing cases). Care argues that "[f]undamental principles of insurance law make it clear that, as a necessary prerequisite to recovery upon an insurance policy, the insured must show that the claim was within the coverage provided by the policy." *Id.* at 7. While this may be a correct statement of basic insurance principles, Care's obligations in this case arise under the MCARE Act, which governs professional liability policies issued to health care providers.

Section 714(c) of the MCARE Act sets forth the general obligations of a professional liability insurer, such as Care, when a medical malpractice claim is filed against an insured health care provider. Section 714(c) provides:

---

[6] A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient to state a claim. Pa.R.Civ.P. 1028(a)(4).

8

*A basic coverage insurer . . . shall provide a defense to a medical professional liability claim*, including a defense of any potential liability of the [MCARE F]und, *except as provided for in* [*Section 715 of the MCARE Act*]. . . .

40 P.S. § 1303.714(c) (emphasis added). Section 715(d) of the MCARE Act, in turn, addresses an insurer's obligations with respect to extended reporting, or tail, coverage claims as follows:

> **(d) Extended coverage required.**—Notwithstanding subsections (a), (b) and (c), *all medical professional liability insurance policies issued on or after January 1, 2006, shall provide indemnity and defense for claims asserted against a health care provider for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.*

*Id.* § 1303.715(d) (emphasis added).

In her Petition for Review, Ms. Pizzuti asserts that when Dr. Dunham purchased his Tail Policy in 2013, Care was obligated to provide him with tail coverage that met the requirements of Section 715(d) of the MCARE Act. Specifically, she claims that Care was required to provide indemnity and defense for malpractice claims asserted against Dr. Dunham four or more years after the tort occurred, as in this case. Pet. for Rev. ¶¶ 25-28.[7] In essence, Ms. Pizzuti contends that the Tail Policy issued to Dr. Dunham, which expired on September 19, 2017, violated Section 715(d) of the MCARE Act, because there *should have been* tail coverage in place at the time the claim was made.

---

[7] "A tort action must be filed within two years after the cause of action accrued. Under the discovery rule, the applicable statute of limitations period begins to run when the plaintiff learns of an injury and its cause." *W. Penn*, 11 A.3d at 601 n.6 (internal citation omitted). Here, Ms. Pizzuti alleges that, under the discovery rule, she and her husband did not learn of Dr. Dunham's negligence until December 2016, when Mr. Pizzuti was diagnosed with advanced prostate cancer, and they filed their malpractice action within two years of that date, on September 24, 2018. Pet. for Rev. ¶¶ 22-23.

9

The plain language of Section 715(d) of the MCARE Act mandates that a medical professional liability policy issued after January 1, 2006 include tail coverage for tort claims asserted four or more years after the tort occurs. However, the Pennsylvania Insurance Department's (Department) regulations place the responsibility for purchasing tail coverage on the health care provider. *See* 31 Pa. Code §§ 242.2, 242.7(a)(2), & 242.17(d); *see also Gingerlowski v. Ins. Dep't*, 961 A.2d 237, 243 (Pa. Cmwlth. 2008) ("A health care provider must purchase tail coverage or its substantial equivalent on the termination of a claims[-]made policy or he will not be eligible for [MCARE] Fund indemnification and defense of claims arising after the termination of the claims[-]made policy."). As discussed above, Dr. Dunham purchased tail coverage from Care when he surrendered his medical license in 2013. Pet. for Rev. ¶¶ 24-25.

Ms. Pizzuti appears to argue that Section 715(d) of the MCARE Act required Care to provide tail coverage to Dr. Dunham indefinitely or, at a minimum, for an indeterminate period longer than four years after his claims-made policy terminated. However, Section 715(d) does not specify how long tail coverage, once purchased by the health care provider, must remain in effect, nor have the parties cited any case law on this issue. Section 742 of the MCARE Act, however, addresses an insurer's obligation to ensure suitable liability coverage after a health care provider discontinues his medical practice as follows:

> The [C]ommissioner [of the Department] shall not approve a medical professional liability insurance policy written on a "claims made" basis by any insurer doing business in this Commonwealth *unless the insurer shall guarantee to the [C]ommissioner the continued availability of suitable liability protection for a health care provider subsequent to the discontinuance of professional practice by the health care provider* or the termination of the insurance policy by the insurer or the health care

10

provider *for so long as there is a reasonable probability of a claim for injury for which the health care provider may be held liable*.

40 P.S. § 1303.742 (emphasis added).

Here, while Ms. Pizzuti avers that Dr. Dunham's Tail Policy expired on September 19, 2017, *see* Pet. for Rev. ¶ 26, the Petition for Review contains no further allegations regarding the Tail Policy's terms and conditions or the circumstances surrounding the purchase and issuance of the Tail Policy. We are unable to determine, at this stage of the proceedings, whether the four-year extended coverage policy Care issued to Dr. Dunham was suitable under the circumstances of this case or whether Care violated Section 715(d) of the MCARE Act.

Accepting the averments in the Petition for Review as true, as we must, we conclude that Ms. Pizzuti has stated a legally sufficient claim against Care. Therefore, we overrule this Preliminary Objection. *See Pa. State Lodge*, 909 A.2d at 916 ("[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.").

### b. Lack of Specificity

Next, Care asserts that the Petition for Review should be dismissed because it fails to plead with specificity "how [Care's] [p]olicy [issued to Dr. Dunham] or [the Tail Policy] . . . violated the law" and "how the 'underlying' [m]alpractice [a]ction unfolded such that Dr. Dunham's liability became clear and indefensible," thereby resulting in the $1,000,000 settlement. Care Br. in Support of Prelim. Objs. at 8. We disagree.

A petition for review in the nature of a complaint "must set forth material facts which establish a cause of action and which enable the [respondent] to know the nature of [its] alleged wrongdoing so that [it] may prepare a defense." *Gen. State*

11

*Auth. v. Lawrie & Green*, 356 A.2d 851, 856 (Pa. Cmwlth. 1976); *see* Pa.R.Civ.P. 1019(a) (requiring that "[t]he material facts on which a cause of action or defense is based . . . be stated in a concise and summary form").

In her Petition for Review, Ms. Pizzuti alleges the factual bases for her claims against Care as follows:

> 11. . . . [P]er the MCARE Act, Dr. Dunham's underlying insurance carrier, [Care], was statutorily required to provide extended coverage to Dr. Dunham:
>
>> **(d) Extended coverage required:** Notwithstanding subsections (a), (b) and (c), all medical professional liability insurance policies issued on or after January 1, 2006, shall provide indemnity and defense for claims asserted against a health care provider for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.
>
> 40 P.S. §[]1303.715(d) (emphasis added).
>
> . . . .
>
> 13. C[are] had a duty to provide Dr. Dunham with an insurance policy that met the requirements of the MCARE Act; more specifically to provide indemnity and defense for claims asserted against Dr. Dunham for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.
>
> . . . .
>
> 25. . . . Dr. Dunham purchased an Extended Reporting Endorsement on his professional liability insurance policy with C[are].
>
> 26. The C[are] Extended Reporting Endorsement provided a four-year extended reporting period[,] which C[are] claims ended on September 19, 2017.

12

27. The insurance policy issued to Dr. Dunham by C[are,] however[,] is contrary to the MCARE Act requirement that ". . . all medical professional liability insurance policies issued on or after January 1, 2006, shall provide indemnity and defense for claims asserted against a health care provider for a . . . tort which occurs four or more years after the tort occurred . . ." See 40 P.S. §[]1303.715(d).

Pet. for Rev. ¶¶ 11, 13, & 25-27. We conclude that these factual averments are sufficiently specific to apprise Care of the nature of the claims against it.

We likewise conclude that Ms. Pizzuti's averments relating to the underlying medical malpractice action are sufficiently specific so as to overcome Care's Preliminary Objection. *See id.* ¶¶ 21, 22, 33, & 34 (summarizing the factual and procedural history of the medical malpractice case and resulting settlement agreement). Moreover, in support of these averments, Ms. Pizzuti attached to the Petition for Review the Complaint filed in the underlying malpractice action, as well as the Settlement and Forbearance Agreement. *See id.*, Exs. A & B. In any event, Care does not explain how additional details regarding the underlying malpractice action would assist Care in defending against the present insurance coverage matter. *See Gen. State*, 356 A.2d at 854 (recognizing that a complaint need not be "an all[-]inclusive narrative of events underlying the claim"). Therefore, we overrule this Preliminary Objection.

### c. Failure to Conform to Rules of Court

Care also asserts that the Petition for Review fails to conform to rules of court because Ms. Pizzuti failed to attach two documents relating to the Dunham Estate's request for coverage from the MCARE Fund. Pennsylvania Rule of Civil Procedure 1019(i) states: "When any claim or defense is *based upon a writing*, the pleader *shall attach a copy of the writing, or the material part thereof*, but if the writing or copy is not accessible to the pleader, it is sufficient so to state together with the

13

reason, and to set forth the substance of the writing." Pa.R.Civ.P. 1019(i) (emphasis added).

Care takes issue with the following two averments in the Petition for Review:

> 30. . . . [O]n October 26, 2018, Jay Silberblatt, the attorney representing the . . . Dunham[] Estate, reported the claim, i.e.[,] the [u]nderlying [c]ase, to the MCARE Fund by filing a C-416 Claim Form so that the MCARE Fund would then undertake a defense of the allegations against [the] Dunham[] Estate. As such, the MCARE Fund was put on notice in a timely manner pursuant to [Section 715(a)] of the MCARE Act.

> 31. By letter dated November 8, 2018, the MCARE Fund denied the request to defend the case and provide any indemnification coverage and took the position that, per the MCARE Act, it was C[are's] responsibility to defend the case and provide any indemnification coverage.

Pet. for Rev. ¶¶ 30-31.

Care argues that, because Ms. Pizzuti did not attach the referenced documents to the Petition for Review, Care is unable to properly respond to these allegations. We reject this claim. The documents at issue do not relate to Ms. Pizzuti's claims against Care; they relate solely to her claims against the MCARE Fund. The referenced documents also do not form the basis of her cause of action against Care. Therefore, we overrule this Preliminary Objection.

### d. Attorneys' Fees and Costs

Finally, Care asserts that Ms. Pizzuti's demand for attorneys' fees and costs stemming from the instant declaratory judgment action should be stricken from the Petition for Review. We agree.

Generally, the parties to an action must bear their own attorneys' fees. *Dep't of Env't Prot. v. Bethenergy Mines, Inc.*, 758 A.2d 1168, 1173 (Pa. 2000). Our

14

courts have consistently applied the "American Rule" with regard to attorneys' fees. *Merlino v. Del. Cnty.*, 728 A.2d 949, 951 (Pa. 1999). Under the American Rule, "there can be no recovery of attorneys' fees from an adverse party, absent an *express statutory authorization, a clear agreement by the parties*[,] *or some other established exception.*" *Id.* (emphasis added); *see also* Section 2503(10) of the Judicial Code, 42 Pa. C.S. § 2503(10) (stating that "a litigant is entitled to attorneys' fees as part of the taxable costs, only in circumstances specified by statute").

In her Petition for Review, Ms. Pizzuti asserts a claim for "attorney[s'] fees and costs of suit *incurred in pursuing coverage for the $1,000,000 settlement*" – i.e., the action before this Court. Pet. for Rev. at 11 (paragraph "b" of the prayer for relief) (emphasis added). However, Ms. Pizzuti cites no statutory basis for the recovery of attorneys' fees stemming from this action, nor does she point to any agreement between the parties to this action regarding attorneys' fees.

In response to this Preliminary Objection, Ms. Pizzuti merely asserts: "[B]ecause of [Care's] alleged breach in its duty to provide a policy to cover indemnification and defense to the [u]nderlying [c]ase, [the] Dunham[] Estate, which assigned its right to [Ms. Pizzuti], had to provide its own defense," which "caused [the] Dunham[] Estate to suffer counsel fees and costs *throughout the* [*u*]*nderlying* [*c*]*ase.*" Pizzuti Br. in Opp'n to Care Prelim. Objs. at 9 (emphasis added). She contends that those "defense costs . . . should have been born by [Care]" pursuant to Section 715(d) of the MCARE Act. *Id.*[8] However, Care is *not* objecting to Ms. Pizzuti's request for attorneys' fees and costs *in the underlying medical*

---

[8] Ms. Pizzuti also makes this same argument in response to the MCARE Fund's and Trinity's Preliminary Objections to her request for attorneys' fees and costs in this action. *See* Pizzuti Br. in Opp'n to MCARE Fund Prelim. Objs. at 4-5; Pizzuti Br. in Opp'n to Trinity Prelim. Objs. at 5-6.

*malpractice action*. Rather, it is objecting to her request for attorneys' fees and costs *in this declaratory judgment action*. As explained above, Ms. Pizzuti cites no statutory authority or agreement between the parties that would authorize such an award in this case.

Therefore, we sustain this Preliminary Objection and strike from the Petition for Review Ms. Pizzuti's demand for attorneys' fees and costs stemming from this action.

### 2. MCARE Fund's Preliminary Objections

### a. Failure to State Legally Sufficient Claim

The MCARE Fund first asserts that the Petition for Review fails to state a legally sufficient claim against it because the MCARE Fund had no obligation to defend or indemnify the Dunham Estate in the underlying malpractice action. The MCARE Fund asserts that, under the MCARE Act, the duty to defend and indemnify rested exclusively with Care, Dr. Dunham's professional liability insurer.

In support of this Preliminary Objection, the MCARE Fund relies on Section 715 of the MCARE Act, which applies to claims asserted four or more years after the alleged tort occurred. Subsection (a) of Section 715 states:

> **(a) General rule.**—If a medical professional liability claim against a health care provider who was required to participate in the Medical Professional Liability Catastrophe Loss Fund under [S]ection 701(d) of the [A]ct of October 15, 1975 (P.L. 390, No. 111), [*formerly* 40 P.S. §§ 1301.701-1301.706, repealed by the MCARE Act,] known as the Health Care Services Malpractice Act, is made *more than four years after the breach of contract or tort occurred and if the claim is filed within the applicable statute of limitations, the claim shall be defended by the* [*MCARE Fund*] if the [MCARE Fund] received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer. . . .

16

40 P.S. § 1303.715(a) (emphasis added). However, subsection (d) of Section 715 provides that *"[n]otwithstanding subsection (a), . . . all medical professional liability insurance policies issued on or after January 1, 2006, shall provide indemnity and defense for claims asserted against a health care provider for a . . . tort which occurs four or more years after the . . . tort occurred* and after December 31, 2005." *Id.* § 1303.715(d) (emphasis added). Thus, the MCARE Fund contends that because the underlying malpractice action was filed more than four years after the tort occurred and because Dr. Dunham's Tail Policy was issued after January 1, 2006, subsection (d) shifts the responsibility of defense and indemnity from the MCARE Fund to Care.

In response, Ms. Pizzuti asserts that if this Court determines that Care was not obligated to defend and indemnify the Dunham Estate due to the expiration of the Tail Policy, then the MCARE Fund was required to defend and indemnify the Dunham Estate under Section 715(a) of the MCARE Act. *See* Pet. for Rev. ¶¶ 10 & 36; Pizzuti Br. in Opp'n to MCARE Fund Prelim. Objs. at 3-4.

Both subsection (a) and subsection (d) of Section 715 apply to claims asserted four or more years after the alleged tort occurred. Subsection (a) places the obligation to defend such claims on the MCARE Fund, while subsection (d) places that obligation on the professional liability insurer. However, even if this Court were to determine that Care was obligated to provide defense and indemnity to the Dunham Estate, it appears that the MCARE Fund, as the excess carrier, would still be liable for a portion of the $1,000,000 settlement. *See* Section 711(d)(3)(i) of the MCARE Act, 40 P.S. § 1303.711(d)(3)(i) (stating that, for a policy issued or renewed after 2006, the basic coverage amount is $750,000 per claim for a health care provider that is not a hospital); Section 712(a) of the MCARE Act, 40 P.S. §

17

1303.712(a) (stating that the MCARE Fund "pay[s] claims against participating health care providers for losses or damages awarded in medical professional liability actions against them *in excess of the basic insurance coverage* required by [S]ection 711(d)" of the MCARE Act) (emphasis added).

As explained above, however, we are unable to determine, at this stage of the proceedings, whether Care violated its obligation to provide suitable tail coverage to Dr. Dunham under the MCARE Act or whether Care was obligated to indemnify and defend the Dunham Estate in the underlying malpractice action. Consequently, we are unable to determine whether the MCARE Fund was responsible, in whole or in part, for defense and indemnity under Section 715(a) of the Act.

Accepting the averments in the Petition for Review as true, we conclude that Ms. Pizzuti has stated a legally sufficient claim against the MCARE Fund. Therefore, we overrule this Preliminary Objection.

### b. Attorneys' Fees and Costs

Second, the MCARE Fund asserts that Ms. Pizzuti's request for attorneys' fees and costs stemming from this action should be stricken from the Petition for Review. We agree, for the reasons stated in our discussion of Care's Preliminary Objections above. Therefore, we sustain this Preliminary Objection.

### 3. Trinity's Preliminary Objections

### a. Statute of Limitations

First, Trinity asserts that although Ms. Pizzuti filed her Petition for Review under the Declaratory Judgments Act,[9] her claims against Trinity sound in negligence. In her Petition for Review, Ms. Pizzuti alleges that Trinity had a duty to ensure that Dr. Dunham had the requisite professional liability coverage under the

---

[9] 42 Pa. C.S. §§ 7531-41.

18

MCARE Act and breached that duty, causing harm to the Dunham Estate. Specifically, Ms. Pizzuti alleges:

> 15. As the insurance agency, Trinity Insurance had a duty to ensure that C[are] provided Dr. Dunham with an insurance policy that met the requirements of the MCARE Act; more specifically to provide indemnity and defense for claims asserted against Dr. Dunham for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.
>
> . . . .
>
> 17. As the insurance broker, Mr. Hong had a duty to ensure that C[are] provided Dr. Dunham with an insurance policy that met the requirements of the MCARE Act; more specifically to provide indemnity and defense for claims asserted against Dr. Dunham for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.
>
> 18. At all times material hereto, Mr. Hong was an agent, employee, servant, and/or ostensible agent of Trinity Insurance.

Pet. for Rev. ¶¶ 15 & 17-18. Ms. Pizzuti further alleges that "Trinity Insurance and/or Mr. Hong breached their duties and negligently failed to secure and/or provide the required insurance coverage per [the MCARE Act]." *Id.* ¶ 36. Trinity asserts, however, that Ms. Pizzuti filed her Petition for Review beyond the two-year statute of limitations for negligence claims and, thus, her claims against Trinity must be dismissed. *See* Section 5524(7) of the Judicial Code, 42 Pa. C.S. § 5524(7) (providing a two-year limitations period for "[a]ny . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct"). We agree.[10]

---

[10] Statute of limitations may be raised by preliminary objection if the defense is clear on the face of the pleadings and the responding party does not file preliminary objections to the
**(Footnote continued on next page…)**

19

"Generally speaking, statutes of limitations are rules of law that set time limits for bringing legal claims." *Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986, 993-94 (Pa. 2020). The time for filing a cause of action begins to run "from the time the cause of action accrued." Section 5502(a) of the Judicial Code, 42 Pa. C.S. § 5502(a). A negligence "cause of action generally accrues on the date of the accident or injury. A cause of action does not arise until *some person suffers injury or loss by reason of the alleged negligent conduct*; mere negligence itself establishes no right of action." *Saft v. Upper Dublin Twp.*, 636 A.2d 284, 286 (Pa. Cmwlth. 1993) (internal citations omitted).

We conclude that the statute of limitations on Ms. Pizzuti's negligence claims against Trinity began to run, at the latest, on November 8, 2018, when Ms. Pizzuti alleges that the MCARE Fund denied the Dunham Estate's request for defense and indemnity of the underlying action. *See* Pet. for Rev. ¶ 31.[11] That is when the Dunham Estate learned of Trinity's alleged failure to secure the proper tail coverage for Dr. Dunham under the MCARE Act. Ms. Pizzuti also alleges that after Care and the MCARE Fund denied coverage, the Dunham Estate began to incur legal fees in defending against the underlying malpractice action. *Id.* ¶ 32; *see* Pet. for Rev. at 11 (seeking "attorney[s'] fees and costs of defense incurred by the [Dunham] Estate in the underlying action" as well as recovery of the $1,000,000 settlement amount).

Ms. Pizzuti contends, however, that the two-year statute of limitations on her negligence claims against Trinity did not begin to run until the Dunham Estate

preliminary objections. *Petsinger v. Dep't of Lab. & Indus., Off. of Vocational Rehab.*, 988 A.2d 748, 758 (Pa. Cmwlth. 2010). Ms. Pizzuti has not filed preliminary objections to Trinity's Preliminary Objections.

[11] Care denied the Dunham Estate's request for defense and indemnity of the underlying action before the MCARE Fund did, but the Petition for Review does not identify the date of Care's denial of coverage. *See* Pet. for Rev. ¶ 28.

settled the underlying lawsuit on September 24, 2019, thereby establishing its liability for the $1,000,000 settlement. However, a "cause of action accrues upon actual or constructive knowledge of *at least some form of significant harm* and of a factual cause linked to another's conduct, *without the necessity of notice of the full extent of the injury*, the fact of actual negligence, or precise cause." *Carlino v. Ethicon, Inc.*, 208 A.3d 92, 103 (Pa. Super. 2019) (emphasis added). As explained above, Ms. Pizzuti avers that after Care and the MCARE Fund denied coverage, the Dunham Estate began to incur legal fees in defending against the underlying medical malpractice action, when such defense should have been provided by Care or the MCARE Fund. Pet. for Rev. ¶¶ 10, 13, & 32. Even though the full amount of its liability was unknown at that time, the Dunham Estate had actual knowledge that it suffered harm due to Trinity's purported negligence, because it was forced to provide its own defense and expend legal fees in the underlying malpractice action. *Id.* ¶ 32 & n.2 (averring that, following the denial of coverage, the Dunham Estate's attorney "filed responsive pleadings, answered discovery, participated in numerous depositions, [and] produced Mrs. Dunham for deposition" in the underlying litigation).

We conclude that the statute of limitations on Ms. Pizzuti's negligence claims against Trinity began to run, at the latest, on November 8, 2018, when the MCARE Fund denied the Dunham Estate's request for coverage. Ms. Pizzuti did not file her Petition for Review until June 25, 2021, well beyond the two-year limitations period. Therefore, we sustain this Preliminary Objection.

### b. Attorneys' Fees and Costs

Second, Trinity asserts that Ms. Pizzuti's request for attorneys' fees and costs stemming from this action should be stricken from the Petition for Review. We

21

agree, for the reasons stated in our discussion of Care's Preliminary Objections above. Therefore, we sustain this Preliminary Objection.

## Conclusion

Accordingly, we overrule in part and sustain in part Care's Preliminary Objections, overrule in part and sustain in part the MCARE Fund's Preliminary Objections, and sustain Trinity's Preliminary Objections. We also strike from the Petition for Review Ms. Pizzuti's demand for attorneys' fees and costs stemming from this declaratory judgment action.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Pizzuti, Individually and as : 
the Executrix of the Estate of Thomas : 
Pizzuti, Deceased, as assignee of : 
Mary Christine Dunham, the : 
Executrix of the Estate of Douglas A. : 
Dunham, MD, : 
    Petitioner : 
     : 
  v. :  No. 206 M.D. 2021
     : 
Pennsylvania Insurance Department, : 
Medical Care Availability and : 
Reduction of Error Fund; Care : 
Professional Liability Association, : 
LLC d/b/a Care Risk Retention : 
Group, Inc.; Trinity Physician : 
Financial & Insurance Services; : 
and Joseph Hong, : 
    Respondents :

## **O R D E R**

AND NOW, this 4th day of March, 2022, we hereby: OVERRULE IN PART AND SUSTAIN IN PART the Preliminary Objections filed by the Pennsylvania Insurance Department, Medical Care Availability and Reduction of Error Fund, OVERRULE IN PART AND SUSTAIN IN PART the Preliminary Objections filed by Care Professional Liability Association, LLC d/b/a Care Risk Retention Group, Inc., and SUSTAIN the Preliminary Objections filed by Trinity Physician Financial and Insurance Services and Joseph Hong. We also hereby STRIKE from the Petition for Review in the Nature of a Complaint for Declaratory Judgment the demand for attorneys' fees and costs stemming from the litigation of the present action.

         _____
         ELLEN CEISLER, Judge