IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hollidaysburg Community Watchdog,   :
                 Appellant   :
  :
         v.   :
  :
The Borough of Hollidaysburg and   :
James Gehret, Borough Manager of   :   No. 196 C.D. 2024
Hollidaysburg Borough   :   Submitted: May 6, 2025


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: July 16, 2025


       Hollidaysburg Community Watchdog (HCW) appeals from the Blair County (County) Common Pleas Court's (trial court) February 6, 2024 order (entered February 13, 2024) sustaining the Borough of Hollidaysburg's (Borough) preliminary objections (POs) and dismissing HCW's corrected Petition for Declaratory Judgment and Injunctive Relief (Amended Complaint) against the Borough and James Gehret (Gehret), Borough Manager (collectively, Appellees), for lack of standing. HCW presents three issues for this Court's review: (1) whether the trial court erred by holding that HCW lacked standing; (2) whether the trial court erred by dismissing ethical misconduct claims against Borough Councilman Brady Leahy (Leahy); and (3) whether the trial court erred by consolidating the instant action with a separate lawsuit that alleged Sunshine Act[1] violations (Action No. 2022 GN 540).

---

[1] 65 Pa.C.S. §§ 701-716.

HCW is a community organization registered with the Pennsylvania Department of State and located at 511 Allegheny Street, Suite 1, Hollidaysburg, Pennsylvania, whose described purpose is to deter misconduct and corruption in local government. On May 25, 2022, HCW filed a complaint against Appellees seeking injunctive relief and declaratory judgment. Therein, HCW alleged numerous claims including Appellees' illegal disbursement of funds, illegal destruction of records, failure to address corruption in the Phoenix Volunteer Fire Department (PVFD) after two officers were convicted on federal embezzlement charges, and Leahy's ethical misconduct in voting on matters involving his brother-in-law, Erick Schmitt, the assistant chief of the PVFD. On July 12, 2022, Appellees filed preliminary objections to the complaint, alleging, *inter alia*, that HCW lacked standing.[2] On August 31, 2022, the trial court held oral argument.[3] On November

---

[2] Appellees also argued in their brief in support of the POs that the matter should be stayed pending disposition of Action No. 2022 GN 540, described by Appellees as a "parallel action." Original Record (O.R.) at 83. Because the pages of the trial court's Original Record are not numbered, the page numbers referenced herein reflect electronic pagination.

HCW responded to the POs, stating, in relevant part:

> [HCW] is admittedly unsure whether the term "parallel suit" used by [Appellees] has any concrete legal meaning. Although [Action No.] 2022[]GN[]540 and [the instant action] share a number of salient facts, they arise from separate events and circumstances that would seem to necessitate separate proceedings. [Appellees'] assertion that "the allegations in [Action No.] 2022[]GN[]540[] are essentially the same as here" is simply untrue. Only the context and the actors are the same, [] not the illegalities alleged. While consolidation could serve to enhance efficiency and save costs, [HCW] has presumed that the legal issues and the remedies involved are sufficiently dissimilar that a motion to consolidate would likely be denied. If [HCW] is wrong about that, and upon a suggestion from th[e] [] [trial] court, [HCW] would be willing to stipulate with [Appellees] that [sic] cases be consolidated.

O.R. at 117.

[3] The following exchange occurred at oral argument:

22, 2022, the trial court sustained the preliminary objection that HCW lacked standing, but afforded HCW 30 days to amend its complaint, and dismissed HCW's ethical misconduct claim against Leahy with prejudice.

On December 27, 2022, HCW filed the Amended Complaint, alleging therein that: (1) Appellees intentionally destroyed records that HCW was entitled to under the Right-to-Know Law,[4] and that HCW required for its investigation of the Borough's public expenditures on the PVFD; and (2) Appellees disbursed funds to the PVFD in direct contravention of Section 1202(56) of the Borough Code[5] by failing to collect mandatory records of line-item expenditures.

---

> [Appellees' Counsel:] . . . . There's never been an order approving that request for consolidation and I don't want to speak for everybody but **I believe all of the parties have agreed that the cases should be consolidated** and heard as one matter and then the second issue is the one you raised and that's the motion in limine that was filed.
>
> [HCW's Representative Richard Latker]: **We agree**, **Your Honor**.
>
> BY THE COURT: . . . **I'll do a formal order consolidating the** . . . **cases**.

O.R. at 202 (emphasis added).

[4] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[5] Section 1202(56) of the Borough Code authorizes a borough

> [t]o ensure that fire and emergency medical services are provided within the borough by the means and to the extent determined by the borough, including the appropriate financial and administrative assistance for these services. The borough shall consult with fire and emergency medical services providers to discuss the emergency services needs of the borough. The borough shall require any emergency services organization receiving borough funds to provide to the borough an annual itemized listing of all expenditures of these funds before the borough may consider budgeting additional funding to the organization.

8 Pa.C.S. § 1202(56).

On January 17, 2023, Appellees filed the POs, therein alleging that HCW's action failed to conform to law,[6] HCW's Amended Complaint was insufficiently specific,[7] HCW's Amended Complaint was legally insufficient,[8] and HCW lacked standing. On February 6, 2023, HCW filed a response to the POs, and the parties filed supporting briefs. By February 6, 2024 order (issued February 13, 2024), the trial court sustained the POs and dismissed the Amended Complaint with prejudice. HCW appealed to this Court.[9]

HCW first argues that the trial court erred by holding that HCW lacked standing. Our Supreme Court has observed, with respect to standing in a declaratory judgment action:

> [The Pennsylvania Supreme Court's] task in this case is to first decide whether [the a]ppellees are the proper plaintiffs in this declaratory judgment action, *i.e.*, whether they have a substantial, direct, and immediate interest . . . . *See* [*Off. of Governor v.*] *Donahue*, 98 A.3d [1223,] 1229 [(Pa. 2014)] (recognizing that "[i]n order to sustain an action under the Declaratory Judgments Act,[10] a plaintiff must allege an interest which is direct, substantial[,] and immediate, and must demonstrate the existence of a real or actual controversy, as the courts of this Commonwealth are generally proscribed from rendering decisions in the abstract or issuing purely advisory opinions."). In the Declaratory Judgments Act, . . . the General Assembly vested in courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." [Section 7532 of the Declaratory Judgments Act,] 42 Pa.C.S. § 7532. Significantly, the

---

[6] *See* Pennsylvania Rule of Civil Procedure (Rule) 1028(a)(2), Pa.R.Civ.P. 1028(a)(2).

[7] *See* Rule 1028(a)(3), Pa.R.Civ.P. 1028(a)(3).

[8] *See* Rule 1028(a)(4), Pa.R.Civ.P. 1028(a)(4).

[9] "[This Court] review[s] a trial court's order sustaining preliminary objections and dismissing a complaint for lack of standing *de novo*, and our scope of review is plenary. [This Court] must accept as true all well-pleaded facts set forth in the pleading and any reasonable inferences deducible therefrom." *In re Found. for Anglican Christian Tradition*, 103 A.3d 425, 428 n.4 (Pa. Cmwlth. 2014).

[10] 42 Pa.C.S. §§ 7531-7541.

legislature provided that the Declaratory Judgments Act is "remedial," and "its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." [Section 7541(a) of the Declaratory Judgments Act,] 42 Pa.C.S. § 7541(a).

*Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 482 (Pa. 2021).

The *Papenfuse* Court further explained:

Standing is a justiciability concern, implicating a court's ability to adjudicate a matter. *See Robinson T[wp.],* [*Wash. Cnty., Pa. v. Commonwealth,*] 83 A.3d [901,] 916 [(Pa. 2013)]; *see also Town of McCandless v. McCandless Police Officers Ass'n*, . . . 901 A.2d 991, 1002 ([Pa.] 2006) (explaining standing, ripeness, and mootness are related justiciability considerations that "are concerned with the proper timing of litigation[]"). Accordingly, a court must resolve justiciability concerns as a threshold matter before addressing the merits of the case. *Robinson Twp.*, 83 A.3d at 917. These justiciability doctrines ensure that courts do not issue inappropriate advisory opinions. *See Stuckley v. Zoning Hearing Bd. of Newtown Twp.*, . . . 79 A.3d 510, 516 ([Pa.] 2013).

The doctrine of standing "stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract." *City of Phila.* [*v. Commonwealth*], 838 A.2d [566,] 577 [(Pa. 2003)]. The touchstone of standing is "protect[ing] against improper plaintiffs." *In re Appl*[.] *of Biester*, . . . 409 A.2d 848, 851 ([Pa.] 1979). To do so, courts require a plaintiff to demonstrate he or she has been "aggrieved" by the conduct he or she challenges. *In re Hickson*, . . . 821 A.2d 1238, 1243 ([Pa.] 2003). To determine whether [a] plaintiff has been aggrieved, Pennsylvania courts traditionally examine whether the plaintiff's interest in the outcome of the lawsuit is substantial, direct, and immediate. *Robinson Twp.*, 83 A.3d at 917. "A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the

alleged harm is neither remote nor speculative." . . .
*Donahue*, . . . 98 A.3d [at] 1229 . . . .

*Papenfuse*, 261 A.3d at 481.

HCW contends that due to the location of HCW's offices, it must be inferred that some of its officers, employees, and volunteers work, and perhaps live, in the Borough. HCW posits that because the nonprofit itself is located within the Borough, HCW and its workers are directly affected by the improper governance of the municipality in which they are located. For this reason, HCW asserts that its interests are direct, substantial, and immediate.

However, as a watchdog organization, HCW's purported interest is "to deter misconduct and corruption in local government[,]" Reproduced Record (R.R.) at 58a - in other words, to "procur[e] obedience to the law[.]" *Id.* Thus, HCW does not and cannot demonstrate how such interest "*surpasses* the interest of all citizens . . ." in ensuring a local agency's obedience to the law. *Papenfuse*, 261 A.3d at 481 (quoting *Donahue*, 98 A.3d at 1229).

HCW cites *Robinson Township* in support of its position that it is aggrieved. Therein "the Pennsylvania Supreme Court held that property owners within a zoning district had standing to bring an Environmental Rights Amendment[11] claim based upon 'the serious risk of alteration in the physical nature of their respective political subdivisions and the components of their surrounding environment.'" *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 495 (Pa. Cmwlth. 2018) (quoting *Robinson Twp.*, 83 A.3d at 922). However, HCW's location, or the impact on HCW's workers supporting its purpose "to deter misconduct and corruption in local government[,]" R.R. at 58a, does not establish a substantial interest that "surpass[es] the interest of all citizens in procuring obedience to the law" or otherwise rise to the level of the interests present in

---

[11] PA. CONST. art. I, § 27.

6

*Robinson Township.  Papenfuse*, 261 A.3d at 481 (quoting *Donahue*, 98 A.3d at 1229).

> Notwithstanding,
>
> [our] Supreme Court recognized that certain cases exist in which the facts warrant the granting of standing to taxpayers where their interests arguably are not substantial, direct[,] and immediate. *Biester*, [409 A.2d at] 852; *Consumer Party of P[a.] v. Commonwealth*, . . . 507 A.2d 323, 328 ([Pa.] 1986)[, *abrogated on other grounds by Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383 (Pa. 2005)].  The relaxing of those interest requirements in certain cases where there is little causal connection between the action complained of and the alleged injury is best explained by the basic policy considerations underlying taxpayer standing.  *Consumer Party*, 507 A.2d at 328.  Our Supreme Court articulated these policy considerations in *Biester* as follows:
>
>> "The ultimate basis for granting standing to taxpayers must . . . be sought outside the normal language of the courts.  [The t]axpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.  Such litigation allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts."
>
>> *Biester*, . . . 409 A.2d at 851 n.5 [(]quoting Note, Taxpayers' Suits: A Survey and Summary, 69 Yale L.J. 895, 904 (1960)[)].

*Common Cause/Pa. v. Commonwealth*, 710 A.2d 108, 115-16 (Pa. Cmwlth. 1998), *aff'd per curiam*, 757 A.2d 367 (Pa. 2000).

In *Reich v. The Berks County Intermediate Unit No. 14*, 861 A.2d 1005 (Pa. Cmwlth. 2004), . . . [this Court] discussed the taxpayer standing exception [our] Supreme Court created in . . . *Biester* . . . to the traditional standing requirement that a party have a "substantial interest:"

> That exception warrants the grant of standing to a taxpayer where his or her interest is *not* substantial, direct, and immediate, but **the taxpayer can show** that: (1) the government action would otherwise go unchallenged; (2) those directly and immediately affected by the complained use of expenditures are beneficially affected and not inclined to challenge the action; (3) judicial relief is appropriate; (4) redress through other channels is unavailable; **and** (5) *no other persons are better situated to assert the claim*. *Biester*, . . . 409 A.2d at 852-53.

*Reich*, 861 A.2d at 1009 (second [italic] emphasis added).

*McConville v. City of Phila.*, 80 A.3d 836, 844 (Pa. Cmwlth. 2013) (bold emphasis added).  HCW asserts that it meets each *Biester* element.

However, the trial court concluded that HCW failed to satisfy the fifth *Biester* factor.  The trial court observed:

> [HCW's] corrected [Amended C]omplaint adds no additional facts but argues the [trial c]ourt mis[]interpreted the law.  [HCW] argues standing under the Supreme Court [r]uling in . . . *Biester* . . . [.]  *Biester* held that absent special circumstances[,] taxpayer status is insufficient to grant standing.  The [trial c]ourt can see no difference between [HCW] here and the [p]laintiff in *Biester*, where the request for relief was denied[.]  Other agencies can act in this case.  The federal government intervened in the case, which is what began the action.  The Attorney General and County District Attorney have authority in this matter.  The [trial c]ourt appreciates [HCW]'s desire for good government, but it does not appear the law supports [its] position.

Trial Ct. Op. (Feb. 6, 2024) at 1.  This Court agrees with the trial court.

8

In *Stilp v. General Assembly*, 940 A.2d 1227 (Pa. 2007), the Pennsylvania Supreme Court considered the petitioner's standing as a taxpayer to seek a declaratory judgment that the Commonwealth's Auditor General has the authority and duty to audit the General Assembly's financial accounts. The *Stilp* Court examined the petitioner's standing under *Biester*, stating:

> In applying the *Biester* exception, it is clear that [the petitioner] has not satisfied the five requirements necessary for taxpayer standing. For purposes of decision, [the Pennsylvania Supreme Court] need only focus on the fifth factor. Certainly, the Auditor General, an elected official, is a far-better situated party to bring an action seeking a declaratory judgment that the Department of the Auditor General does, or does not, have the authority to audit the financial accounts of the General Assembly. The fact that [the petitioner] has a different view of the Auditor General's authority, or the role of the office, does not make him better situated than the official. Nor do [the petitioner's] self-serving assertions of his own status, and his gratuitous denigration of elected officials, make him an appropriate party to litigate any question concerning the duties attendant upon an elective office. The discretion to bring such an action lies with the current Auditor General, or a future Auditor General, but no other party. The proper recourse available to [the petitioner], or other persons similarly situated, is to ask the Auditor General to seek to audit the General Assembly. Beyond that, [the petitioner's] remedy, like that of all citizens, is at the ballot box.

*Stilp*, 940 A.2d at 1234. Like the trial court and the *Stilp* Court, here, this Court "need only focus on the fifth factor." *Id*.

HCW maintains that none of the law enforcement agencies moved to enforce the requirements of the Borough Code, 8 Pa.C.S. § 1202(56), the Municipal Records Act, 53 Pa.C.S. §§ 1381-1389, the Sunshine Act, 65 Pa.C.S. §§ 701-716, or the Public Official and Employee Ethics Act, 65 Pa.C.S. §§ 1101-1113. HCW

9

declares that it is the Borough's violation of those statutes for which HCW is seeking injunctive and declaratory relief. Specifically, HCW asserts:

> The Attorney General and [County] District Attorney have the primary responsibility of investigating and prosecuting violations of criminal law, not enforcement of the laws relating to the governance of municipalities. While local law enforcement is enormously effective in the deterrence and prosecution of street crime, it has traditionally shown no inclination to investigate official misconduct, with the sole exceptions of direct embezzlement from the treasury and police abuses. There is no evidence in the public record that the Hollidaysburg Police, the [Pennsylvania] State Police or the [County] District Attorney have ever investigated or prosecuted lawbreaking under [Pennsylvania law] or any other body of law pertaining directly to the function of government. Aside from law enforcement bodies, [HCW] is the only organization in the jurisdiction constituted specifically to investigate and pursue complaints of government misconduct. Its investigation into public funding of the PVFD after the federal embezzlement convictions is what revealed the [Appellees'] alleged misconduct - the destruction of mandatory public records and the unlawful release of funds under [the Borough Code] after failing to collect such records. Moreover, because [HCW] always reports suspicion of illegalities to the police and, where appropriate, to the [County] District Attorney, this Court must consider that it did so before filing this lawsuit.

HCW Br. at 11-12 (citations omitted).

As the trial court observed, both the County District Attorney's Office and the Attorney General have authority and discretion to investigate the concerns raised by HCW,[12] if warranted. HCW can bring such matters to the attention of

---

[12]Appellees identify numerous agencies with jurisdiction to pursue such complaints including the Hollidaysburg Police Department, the Pennsylvania State Police, the County District Attorney's Office, the Pennsylvania Ethics Commission, the Pennsylvania Auditor General, the Pennsylvania Office of Open Records, the Federal Bureau of Investigation, and the United States Attorney's Office. *See* Appellees' Br. at 7.

10

those offices.[13]  Otherwise, HCW's members may seek to remedy their concerns by way of the ballot box.  For these reasons, HCW lacks standing to bring the instant action.[14]  Accordingly, the trial court properly sustained Appellees' PO to HCW's standing.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[13] HCW asserts in its brief, without specificity, that it "always reports suspected illegalities to the police and, where appropriate, the [County] District Attorney, but in every instance that it has done so, the enforcement authorities have declined to act, citing a paucity of resources and the hierarchy of enforcement priorities."  HCW Br. at 6.  The police and County District Attorney's alleged refusal to pursue an action neither demonstrates that HCW is better suited to assert its claims, nor establishes that HCW is better suited to pursue such claims than Commonwealth and federal agencies with jurisdiction to do so.

[14] Because HCW lacks standing, this Court does not reach HCW's other issues.

Hollidaysburg Community Watchdog, :
                 Appellant :
                 :
         v. :
                 :
The Borough of Hollidaysburg and :
James Gehret, Borough Manager of : No. 196 C.D. 2024
Hollidaysburg Borough :

## O R D E R

AND NOW, this 16th day of July, 2025, the Blair County Common Pleas Court's February 6, 2024 order (entered February 13, 2024) is affirmed.

_____
ANNE E. COVEY, Judge